[Civ. No. 42739. Second Dist., Div. Two. July 26, 1974.]

LEONOR ALBERTI DE CANAS et al., Plaintiffs and Appellants, v. ANTHONY G. BICA et al., Defendants and Respondents.

**COUNSEL**

William D. Farber, Robert Johnstone, Cynthia Mertens, Michael Stern, Burton D. Fretz, Howard Scher and Robert S. Catz for Plaintiffs and Appellants.

Robert L. Trapp, Jr., and William S. Marrs for Defendants and Respondents.

**OPINION**

**COMPTON, J.**—Plaintiffs appeal from a judgment of dismissal entered upon the sustaining of a demurrer without leave to amend their complaint for damages and injunctive relief.

The complaint in essence alleges that plaintiffs are farm workers who have been discharged from employment and have not been rehired because defendants, farm labor contractors, contend that they have a sufficient labor supply. According to the allegations of the complaint that labor supply consists of aliens who are illegally within this country and defendants knowingly hire such illegal aliens in the stead of qualified lawful residents of the United States.

Plaintiffs' attempt to obtain redress is bottomed on Labor Code section 2805, which provides criminal penalties for persons who "knowingly employ an alien who is not entitled to lawful residence in the United States if such employment would have an adverse effect on lawful resident workers." According to plaintiffs a violation of this statute constitutes an act of unfair competition which may be enjoined pursuant to Civil Code section 3369.[1] The claim for damages is premised on tortious interference with plaintiffs' right to pursue a livelihood.

The trial court's ruling on the demurrer was squarely based on its holding that Labor Code section 2805 is unconstitutional. Both sides agree that the constitutionality of that section is controlling of the issues presented.

Plaintiffs' claim to equitable relief was treated and disposed of in *Diaz* v. *Kay-Dix Ranch,* 9 Cal.App.3d 588 [88 Cal.Rptr. 443], where the Court of Appeal, after a lengthy discourse on the conflicting policy considerations, refused to enjoin the hiring of illegal aliens and concluded that the problem was one that required the attention of the federal government. Of course, *Diaz* was decided in 1970, prior to the enactment of Labor Code section 2805. The decision there rested on the general balancing of equitable considerations.

The question presented here is whether the result of *Diaz* is now to be rejected because the state Legislature has specifically legislated on the subject. The answer to that question in turn rests upon whether the State of California, within the framework of our system of federalism, can properly legislate on a subject which admittedly is one of primary federal concern.

---

[1]Civil Code section 3369 provides in part: "(1) Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a penal law, except in a case of nuisance or unfair competition.

"(2) Any person performing or proposing to perform an act of unfair competition within this state may be enjoined in any court of competent jurisdiction.

"(3) As used in this section, unfair competition shall mean and include unlawful, unfair or fraudulent practice . . . ."

(*Hines* v. *Davidowitz,* 312 U.S. 52 [85 L.Ed. 581, 61 S.Ct. 399].) We think that California cannot so legislate.

Labor Code section 1850 which purported to prohibit the hiring of aliens on public works in California, was struck down by the California Supreme Court in *Purdy & Fitzpatrick* v. *State of California,* 71 Cal.2d 566 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194], as being an interference with the regulatory scheme enacted by Congress to control immigration. True, section 1850 addressed itself to all aliens whether legally or illegally within the nation's borders, while section 2805 deals only with illegal aliens. Such distinction, however, is not such as to detract from the force of *Purdy & Fitzpatrick's* strong language to the effect that in the area of immigration and naturalization, congressional power is exclusive.

The federal Congress has the specific delegated power to regulate foreign commerce, make treaties and establish rules for naturalization and it has as an incident of national sovereignty the implied power to control the conditions for admission of foreign nationals into the country. (*Ekiu* v. *United States,* 142 U.S. 651 [35 L.Ed. 1146, 12 S.Ct. 336].) No area of governmental activity is more uniquely suited to federal regulation than the control of immigration.

Pursuant to its authority, the Congress of the United States has enacted a comprehensive scheme for controlling immigration and naturalization which includes regulation of employment of aliens. (8 U.S.C. § 1101 et seq.) At this writing,[2] however, the Congress has not imposed upon private employers the burden of determining, in terms of the immigration laws, the status of prospective employees.

Has Congress by its inaction in this latter regard intended that such augmentation of its regulations be open to adoption by the several states? We are of the opinion that the answer is plainly "No." To the contrary, it would appear that until now Congress has specifically and intentionally declined to add sanctions on employers to its control mechanism.

The controlling principles are set forth in the United States Supreme Court decisions involving labor management disputes in which the National Labor Relations Board had declined to assert jurisdiction but had also not ceded jurisdiction to the states. In these cases it was argued that the

---

[2]There is now pending in the United States Congress, H.R. 982 which would amend 8 United States Code section 1324(a) to provide a penalty for knowingly employing an alien not lawfully admitted to the United States.

inaction of the National Labor Relations Board created a "no-man's-land" on which the states might assert jurisdiction.

In *Guss* v. *Utah Labor Board,* 353 U.S. 1, it was stated at page 11 [1 L.Ed.2d 601, 607, 77 S.Ct. 598, 609], "Since Congress' power in the area of commerce among the States is plenary, its judgment must be respected whatever policy objections there may be to creation of a no-man's-land."

California's efforts to provide injunctive relief and damages to an employer who was found to have suffered from an unfair labor practice over which the National Labor Relations Board had refused to assert jurisdiction were set at naught in two opinions by the United States Supreme Court rendered in the same action. (*San Diego Unions* v. *Garmon,* 353 U.S. 26 [1 L.Ed.2d 618, 77 S.Ct. 607, 609], and 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773].) The first case disposed of the injunctive relief and the second disposed of damages for tortious conduct.

In the latter case it was stated at pages 244, 246 and 247 [3 L.Ed.2d, pp. 782, 783, 784]: "To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. . . . It follows that the failure of the Board to define the legal significance under the Act of a particular activity does not give the States the power to act. . . . The governing consideration is that to allow the States to control activities that are potentially subject to federal regulation involves too great a danger of conflict with national labor policy. . . . Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme. . . . In fact, since remedies form an ingredient of any integrated scheme of regulation, to allow the States to grant a remedy here which has been withheld from the National Labor Relations Board only accentuates the danger of conflict."

These holdings are clear authority for the proposition that Labor Code section 2805 either in its provision for criminal penalties or in its application in providing a basis for injunctive relief or damages is in conflict with the national law and policy. These are remedies which the Congress has withheld from the executive branch of the federal government and thus may not be utilized by the states.

In *Dolores Canning Co.* v. *Howard* (1974) *ante,* page 673 [115

Cal.Rptr. 435], Division 5 of this court, also concluded that Labor Code section 2805 is unconstitutional.

The judgment is affirmed.

Fleming, Acting P. J., and Beach, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 24, 1974. Mosk, J., was of the opinion that the petition should be granted.