DE CANAS ET AL. *v.* BICA ET AL.

No. 74–882.  Argued December 16, 1975—Decided February 25, 1976

BRENNAN, J., delivered the opinion of the Court, in which all Members joined except STEVENS, J., who took no part in the consideration or decision of the case.

*Robert S. Catz* argued the cause for petitioners. With him on the briefs were *Howard S. Scher, Ralph Santiago Abascal, Burton D. Fretz,* and *Robert B. Johnstone.*

*William S. Marrs* argued the cause for respondents. With him on the brief was *Robert L. Trapp, Jr.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

California Labor Code Ann. § 2805 (a) provides that "[n]o employer shall knowingly employ an alien who is not entitled to lawful residence in the United States if such employment would have an adverse effect on lawful resident workers." [1] The question presented in this case is whether § 2805 (a) is unconstitutional either because it

---

[1] Section 2805 of the California Labor Code, added by Stats. 1971, p. 2847, c. 1442, § 1, reads in full as follows:

"(a) No employer shall knowingly employ an alien who is not entitled to lawful residence in the United States if such employment would have an adverse effect on lawful resident workers.

"(b) A person found guilty of violation of subdivision (a) is punishable by a fine of not less than two hundred dollars ($200) nor more than five hundred dollars ($500) for each offense.

"(c) The foregoing provisions shall not be a bar to civil action against the employer based upon a violation of subdivision (a)."

is an attempt to regulate immigration and naturalization or because it is pre-empted under the Supremacy Clause, Art. VI, cl. 2, of the Constitution, by the Immigration and Nationality Act (INA), 66 Stat. 163, as amended, 8 U. S. C. § 1101 *et seq.,* the comprehensive federal statutory scheme for regulation of immigration and naturalization.

Petitioners, who are migrant farmworkers, brought this action pursuant to § 2805 (c) against respondent farm labor contractors in California Superior Court. The complaint alleged that respondents had refused petitioners continued employment due to a surplus of labor resulting from respondents' knowing employment, in violation of § 2805 (a), of aliens not lawfully admitted to residence in the United States. Petitioners sought reinstatement and a permanent injunction against respondents' willful employment of illegal aliens.[2] The Superior Court, in an unreported opinion, dismissed the complaint, holding "that Labor Code 2805 is unconstitutional . . . [because] [i]t encroaches upon, and interferes with, a comprehensive regulatory scheme enacted by Congress in the exercise of its exclusive power over immigration . . . ." App. 17a. The California Court of Appeal, Second Appellate District, affirmed, 40 Cal. App. 3d 976, 115 Cal. Rptr. 444 (1974). The Court of Appeal held that § 2805 (a) is an attempt to regulate the conditions for admission of foreign nationals, and therefore unconstitutional because, "in the area of immigration and naturalization, congressional power is exclusive."

---

[2] We assume, *arguendo,* in this opinion, in referring to "illegal aliens," that the prohibition of § 2805 (a) only applies to aliens who would not be permitted to work in the United States under pertinent federal laws and regulations. Whether that is the correct construction of the statute is an issue that will remain open for determination by the state courts on remand. See Part III, *infra.*

*Id.,* at 979, 115 Cal. Rptr., at 446.[3] The Court of Appeal further indicated that state regulatory power over this subject matter was foreclosed when Congress, "as an incident of national sovereignty," enacted the INA as a comprehensive scheme governing all aspects of immigration and naturalization, including the employment of aliens, and "specifically and intentionally declined to add sanctions on employers to its control mechanism." *Ibid.*[4] The Supreme Court of California denied review. We granted certiorari, 422 U. S. 1040 (1975). We reverse.

## I

Power to regulate immigration is unquestionably exclusively a federal power. See, *e. g., Passenger Cases,* 7 How. 283 (1849); *Henderson* v. *Mayor of New York,* 92 U. S. 259 (1876); *Chy Lung* v. *Freeman,* 92 U. S.

---

[3] Insofar as the determination of § 2805's objective is a matter of state law, the Court of Appeal's view that § 2805 (a) is an attempt to regulate the conditions for admission of foreign nationals may be questioned. Another division of the Court of Appeal has said that "the section is not aimed at immigration control or regulation but seeks to aid California residents in obtaining jobs . . . ." *Dolores Canning Co.* v. *Howard,* 40 Cal. App. 3d 673, 686, 115 Cal. Rptr. 435, 442 (1974). *Dolores Canning* also invalidated § 2805 (a), however, relying, *inter alia,* on *Guss* v. *Utah Labor Board,* 353 U. S. 1 (1957), and *San Diego Unions* v. *Garmon,* 359 U. S. 236 (1959), and stating that the statute "does or could affect immigration in several ways." 40 Cal. App. 3d, at 686, 115 Cal. Rptr., at 442–443.

It is also uncertain that the Court of Appeal viewed § 2805 as a constitutionally proscribed state regulation of immigration that would be invalid even absent federal legislation; the court's discussion of the INA seems to imply that the court assumed that Congress could clearly authorize state legislation such as § 2805, even if it had not yet done so.

[4] H. R. 8713, now pending in Congress, would amend 8 U. S. C. § 1324 to provide a penalty for knowingly employing an alien not lawfully admitted to the United States.

275 (1876); *Fong Yue Ting* v. *United States,* 149 U. S. 698 (1893). But the Court has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus *per se* pre-empted by this constitutional power, whether latent or exercised. For example, *Takahashi* v. *Fish & Game Comm'n,* 334 U. S. 410, 415–422 (1948), and *Graham* v. *Richardson,* 403 U. S. 365, 372–373 (1971), cited a line of cases that upheld certain discriminatory state treatment of aliens lawfully within the United States. Although the "doctrinal foundations" of the cited cases, which generally arose under the Equal Protection Clause, *e. g., Clarke* v. *Deckebach,* 274 U. S. 392 (1927), "were undermined in *Takahashi,*" see *In re Griffiths,* 413 U. S. 717, 718–722 (1973); *Graham* v. *Richardson, supra,* at 372–375, they remain authority that, standing alone, the fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain. Indeed, there would have been no need, in cases such as *Graham, Takahashi,* or *Hines* v. *Davidowitz,* 312 U. S. 52 (1941), even to discuss the relevant congressional enactments in finding pre-emption of state regulation if all state regulation of aliens was *ipso facto* regulation of immigration, for the existence *vel non* of federal regulation is wholly irrelevant if the Constitution of its own force requires pre-emption of such state regulation. In this case, California has sought to strengthen its economy by adopting federal standards in imposing criminal sanctions against state employers who knowingly employ aliens who have no federal right to employment within the country; even if such local regulation has some purely speculative and indirect impact on immigration, it does not thereby be-

come a constitutionally proscribed regulation of immigration that Congress itself would be powerless to authorize or approve. Thus, absent congressional action, § 2805 would not be an invalid state incursion on federal power.

## II

Even when the Constitution does not itself commit exclusive power to regulate a particular field to the Federal Government, there are situations in which state regulation, although harmonious with federal regulation, must nevertheless be invalidated under the Supremacy Clause. As we stated in *Florida Lime & Avocado Growers* v. *Paul,* 373 U. S. 132, 142 (1963):

> "[F]ederal regulation . . . should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained."

In this case, we cannot conclude that pre-emption is required either because "the nature of the . . . subject matter [regulation of employment of illegal aliens] permits no other conclusion," or because "Congress has unmistakably so ordained" that result.

States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State. Child labor laws, minimum and other wage laws, laws affecting occupational health and safety, and workmen's compensation laws are only a few examples. California's attempt in § 2805 (a) to prohibit the knowing employment by California employers of persons not entitled to lawful residence in the United States, let alone to work here, is certainly within the mainstream of such police power regulation. Employment of illegal aliens in times of high unemployment deprives citizens and legally admitted aliens of jobs; accept-

ance by illegal aliens of jobs on substandard terms as to wages and working conditions can seriously depress wage scales and working conditions of citizens and legally admitted aliens; and employment of illegal aliens under such conditions can diminish the effectiveness of labor unions. These local problems are particularly acute in California in light of the significant influx into that State of illegal aliens from neighboring Mexico. In attempting to protect California's fiscal interests and lawfully resident labor force from the deleterious effects on its economy resulting from the employment of illegal aliens, § 2805 (a) focuses directly upon these essentially local problems and is tailored to combat effectively the perceived evils.

Of course, even state regulation designed to protect vital state interests must give way to paramount federal legislation. But we will not presume that Congress, in enacting the INA, intended to oust state authority to regulate the employment relationship covered by § 2805 (a) in a manner consistent with pertinent federal laws. Only a demonstration that complete ouster of state power—including state power to promulgate laws not in conflict with federal laws—was " 'the clear and manifest purpose of Congress' " would justify that conclusion. *Florida Lime & Avocado Growers* v. *Paul, supra,* at 146, quoting *Rice* v. *Santa Fe Elevator Corp.,* 331 U. S. 218, 230 (1947).[5] Respondents have not made

---

[5] See also, *e. g., New York Dept. of Social Services* v. *Dublino,* 413 U. S. 405, 413–414 (1973); *Schwartz* v. *Texas,* 344 U. S. 199, 202–203 (1952); *California* v. *Zook,* 336 U. S. 725, 732–733 (1949).

Of course, even absent such a manifestation of congressional intent to "occupy the field," the Supremacy Clause requires the invalidation of any state legislation that burdens or conflicts in any manner with any federal laws or treaties. See Part III, *infra.* However, "conflicting law, absent repealing or exclusivity provisions,

that demonstration. They fail to point out, and an independent review does not reveal, any specific indication in either the wording or the legislative history of the INA that Congress intended to preclude even harmonious state regulation touching on aliens in general, or the employment of illegal aliens in particular.[6]

should be pre-empted . . . 'only to the extent necessary to protect the achievement of the aims of' " the federal law, since "the proper approach is to reconcile 'the operation of both statutory schemes with one another rather than holding [the state scheme] completely ousted.' " *Merrill Lynch, Pierce, Fenner & Smith* v. *Ware,* 414 U. S. 117, 127 (1973), quoting *Silver* v. *New York Stock Exchange,* 373 U. S. 341, 361, 357 (1963).

[6] Of course, state regulation not congressionally sanctioned that discriminates against aliens lawfully admitted to the country is impermissible if it imposes additional burdens not contemplated by Congress:

"The Federal Government has broad constitutional powers in determining what aliens shall be admitted to the United States, the period they may remain, regulation of their conduct before naturalization, and the terms and conditions of their naturalization. See *Hines* v. *Davidowitz,* 312 U. S. 52, 66. Under the Constitution the states are granted no such powers; *they can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence* of aliens in the United States or the several states. State laws which impose discriminatory burdens upon the entrance or residence of *aliens lawfully within* the United States conflict with this constitutionally derived federal power to regulate immigration, and have accordingly been held invalid." *Takahashi* v. *Fish & Game Comm'n,* 334 U. S. 410, 419 (1948) (emphasis supplied).

See also, *e. g., Graham* v. *Richardson,* 403 U. S. 365, 376–380 (1971); *Truax* v. *Raich,* 239 U. S. 33, 41–42 (1915); cf. also *Sugarman* v. *Dougall,* 413 U. S. 634, 641–646 (1973); *In re Griffiths,* 413 U. S. 717 (1973). But California Code § 2805 appears to be designed to protect the opportunities of lawfully admitted aliens for obtaining and holding jobs, rather than to add to their burdens. The question whether § 2805 (a) nevertheless in fact imposes burdens bringing it into conflict with the INA is open for inquiry on remand. See Part III, *infra.*

Nor can such intent be derived from the scope and detail of the INA. The central concern of the INA is with the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country. The comprehensiveness of the INA scheme for regulation of immigration and naturalization, without more, cannot be said to draw in the employment of illegal aliens as "plainly within . . . [that] central aim of federal regulation." *San Diego Unions* v. *Garmon,* 359 U. S. 236, 244 (1959).[7] This conclusion is buttressed by the fact that comprehensiveness of legislation governing entry and stay of aliens was to be expected in light of the nature and complexity of the subject. As the Court said in another legislative context: "Given the complexity of the matter addressed

---

[7] In finding § 2805 pre-empted by the INA, the Court of Appeal cited *Guss* v. *Utah Labor Board,* 353 U. S. 1 (1957), and *San Diego Unions* v. *Garmon,* 353 U. S. 26 (1957), and 359 U. S. 236 (1959) as controlling authority. Reliance upon those decisions was misplaced. Those decisions involved labor management disputes over conduct expressly committed to the National Labor Relations Board to regulate, but concerning which the Board had declined to assert jurisdiction; the Board had not ceded jurisdiction of such regulation to the States, as it was empowered to do. 353 U. S., at 6–9. This Court rejected the argument that the inaction of the NLRB left the States free to regulate the conduct. Section 10 (a) of the National Labor Relations Act, 29 U. S. C. § 160 (a), expressly excluded state regulation of the disputed conduct unless the Board entered into an agreement with the State ceding regulatory authority. The Court held in that circumstance that "[t]o leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law." *San Diego Unions* v. *Garmon,* 359 U. S., at 244. *Guss* and *Garmon* recognize, therefore, that in areas that Congress decides require national uniformity of regulation, Congress may exercise power to exclude *any* state regulation, even if harmonious. But nothing remotely resembling the NLRA scheme is to be found in the INA.

by Congress . . . , a detailed statutory scheme was both likely and appropriate, completely apart from any questions of pre-emptive intent." *New York Dept. of Social Services* v. *Dublino*, 413 U. S. 405, 415 (1973).[8]

It is true that a proviso to 8 U. S. C. § 1324, making it a felony to harbor illegal entrants, provides that "employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring." But this is at best evidence of a peripheral concern with employment of illegal entrants,[9] and *San Diego Unions* v. *Garmon, supra,* at 243, admonished that "due regard for the presuppositions of our

---

[8] "Little aid can be derived from the vague and illusory but often repeated formula that Congress 'by occupying the field' has excluded from it all state legislation. Every Act of Congress occupies some field, but we must know the boundaries of that field before we can say that it has precluded a state from the exercise of any power reserved to it by the Constitution. To discover the boundaries we look to the federal statute itself, read in the light of its constitutional setting and its legislative history." *Hines* v. *Davidowitz*, 312 U. S. 52, 78–79 (1941) (Stone, J., dissenting).

[9] A construction of the proviso as not immunizing an employer who knowingly employs illegal aliens may be possible, and we imply no view upon the question. As will appear *infra*, other federal law that criminalizes knowing employment of illegal aliens in the agricultural field sanctions "appropriate" state laws criminalizing the same conduct. Accordingly, neither the proviso to 8 U. S. C. § 1324 (a) nor Congress' failure to enact general laws criminalizing knowing employment of illegal aliens justifies an inference of congressional intent to pre-empt all state regulation in the employment area. Indeed, Congress' failure to enact such general sanctions reinforces the inference that may be drawn from other congressional action that Congress believes this problem does not yet require uniform national rules and is appropriately addressed by the States as a local matter. The cited statutory provisions would, in any event, be relevant on remand in the analysis of actual or potential conflicts between § 2805 and federal law. See also 8 U. S. C. §§ 1101 (a)(15)(H), 1182 (a)(14), 1321–1330.

embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the [federal regulation] . . . ."

Finally, rather than evidence that Congress "has unmistakably . . . ordained" exclusivity of federal regulation in this field, there is evidence in the form of the 1974 amendments to the Farm Labor Contractor Registration Act, 88 Stat. 1652, 7 U. S. C. § 2041 *et seq.* (1970 ed., Supp. IV), that Congress intends that States may, to the extent consistent with federal law, regulate the employment of illegal aliens. Section 2044 (b) authorizes revocation of the certificate of registration of any farm labor contractor found to have employed "an alien not lawfully admitted for permanent residence, or who has not been authorized by the Attorney General to accept employment." Section 2045 (f) prohibits farm labor contractors from employing "an alien not lawfully admitted for permanent residence or who has not been authorized by the Attorney General to accept employment." [10] Of particular significance to our in-

---

[10] Title 7 U. S. C. § 2044 (b)(6) (1970 ed., Supp. IV) provides:

"Upon notice and hearing in accordance with regulations prescribed by him, the Secretary may refuse to issue, and may suspend, revoke, or refuse to renew a certificate of registration to any farm labor contractor if he finds that such contractor—

. . . . . . . . . .

"(6) has recruited, employed, or utilized with knowledge, the services of any person, who is an alien not lawfully admitted for permanent residence, or who has not been authorized by the Attorney General to accept employment . . . ."

Title 7 U. S. C. § 2045 (f) (1970 ed., Supp. IV) provides:
"Every farm labor contractor shall—

. . . . . . . . . .

"(f) refrain from recruiting, employing, or utilizing, with knowl-

quiry is the further provision that "[t]his chapter and the provisions contained herein are *intended to supplement State action* and compliance with this chapter shall not excuse anyone from compliance with *appropriate State law and regulation.*" 7 U. S. C. § 2051 (emphasis supplied). Although concerned only with agricultural employment, the Farm Labor Contractor Registration Act is thus persuasive evidence that the INA should not be taken as legislation by Congress expressing its judgment to have uniform federal regulations in matters affecting employment of illegal aliens, and therefore barring state legislation such as § 2805 (a).[11]

*Hines* v. *Davidowitz*, 312 U. S. 52 (1941), and *Pennsylvania* v. *Nelson*, 350 U. S. 497 (1956), upon which respondents rely, are fully consistent with this conclusion. *Hines* held that Pennsylvania's Alien Registration Act of 1939 was pre-empted by the federal Alien Registration Act. *Nelson* held that the Pennsylvania Sedition Act was pre-empted by the federal Smith Act. Although both cases relied on the comprehensiveness of the federal regulatory schemes in finding pre-emptive intent, both federal statutes were in the specific field which the States were attempting to regulate, while here there is no indication that Congress intended to preclude state law in the area of employment regulation. And *Nelson* stated that even in the face of the general immigration laws, States would have the right "to enforce their sedition laws at times when the Federal Government has not

edge, the services of any person, who is an alien not lawfully admitted for permanent residence or who has not been authorized by the Attorney General to accept employment . . . ."

Violations of the Act are made criminal, and aggrieved persons are accorded the right to civil relief.

[11] The Solicitor General, in his Memorandum for the United States as *Amicus Curiae* 4 n. 4, concedes that the "Act contemplates some limited room for state law," but argues that § 2805 is not "appropriate" in light of various alleged conflicts with federal regulation.

occupied the field and is not protecting the entire country from seditious conduct." 350 U. S., at 500. Moreover, in neither *Hines* nor *Nelson* was there affirmative evidence, as here, that Congress sanctioned concurrent state legislation on the subject covered by the challenged state law. Furthermore, to the extent those cases were based on the predominance of federal interest in the fields of immigration and foreign affairs, there would not appear to be a similar federal interest in a situation in which the state law is fashioned to remedy local problems, and operates only on local employers, and only with respect to individuals whom the Federal Government has already declared cannot work in this country. Finally, the Pennsylvania statutes in *Hines* and *Nelson* imposed burdens on aliens lawfully within the country that created conflicts with various federal laws.

## III

There remains the question whether, although the INA contemplates some room for state legislation, § 2805 (a) is nevertheless unconstitutional because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the INA. *Hines* v. *Davidowitz, supra,* at 67; *Florida Lime & Avocado Growers* v. *Paul,* 373 U. S., at 141. We do not think that we can address that inquiry upon the record before us. The Court of Appeal did not reach the question in light of its decision, today reversed, that Congress had completely barred state action in the field of employment of illegal aliens. Accordingly, there are questions of construction of § 2805 (a) to be settled by the California courts before a determination is appropriate whether, as construed, § 2805 (a) "can be enforced without impairing the federal superintendence of the field" covered by the INA. 373 U. S., at 142.

For example, § 2805 (a) requires that to be employed an alien must be "entitled to lawful residence." In its application, does the statute prevent employment of aliens who, although "not entitled to lawful residence in the United States," may under federal law be permitted to work here? Petitioners conceded at oral argument that, on its face, § 2805 (a) would apply to such aliens and thus unconstitutionally conflict with federal law. They point, however, to the limiting construction given § 2805 (a) in administrative regulations promulgated by the California Director of Industrial Relations. California Administrative Code, Title 8, part 1, c. 8, art. 1, § 16209 (1972), defines an alien "entitled to lawful residence" as follows: "An alien entitled to lawful residence shall mean any non-citizen of the United States who is in possession of a Form I–151, Alien Registration Receipt Card, or any other document issued by the United States Immigration and Naturalization Service which authorizes him to work." *Dolores Canning Co.* v. *Howard,* 40 Cal. App. 3d 673, 677 n. 3, 115 Cal. Rptr, 435, 436 n. 3 (1974). Whether these regulations were before the Superior Court in this case does not appear, and the Court of Appeal found § 2805 (a) unconstitutional without addressing whether it conflicts with federal law.[12] Ob-

---

[12] It would appear the regulations were not before the Superior Court since that court held § 2805 (a) to be in conflict with federal immigration laws, stating:

"[T]he statute forbids hiring of an 'alien who is not entitled to lawful residence in the United States,' and under the U. S. Immigration laws, there are many such aliens who may work in the United States, under certain classifications, and Labor Code 2805 is in direct conflict with Federal Law." App. 18a.

*Dolores Canning Co.* v. *Howard* quotes the definition in a footnote, 40 Cal. App. 3d, at 677 n. 3, 115 Cal. Rptr., at 436 n. 3, but the opinion states nothing respecting its significance in construing § 2805 (a).

viously it is for the California courts to decide the effect of these administrative regulations in construing § 2805 (a), and thus to decide in the first instance whether and to what extent, see n. 5, *supra,* § 2805 as construed would conflict with the INA or other federal laws or regulations. It suffices that this Court decide at this time that the Court of Appeal erred in holding that Congress in the INA precluded any state authority to regulate the employment of illegal aliens.

The judgment of the Court of Appeal is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE STEVENS took no part in the consideration or decision of this case.