**Max R. KARGMAN et al., Plaintiffs, Appellees,**

v.

**Thomas A. SULLIVAN et al., Appellants.**

**Bertram A. DRUKER et al., Plaintiffs, Appellees,**

v.

**CITY OF BOSTON et al., Appellants.**

**Nos. 76-1304—76-1307.**

United States Court of Appeals, First Circuit.

June 15, 1977.

Thomas H. Martin, Boston, Mass., with whom Philip A. Mason and Mason & Martin, Boston, Mass., were on brief, for City of Boston and Boston Rent Board.

Brian Michael Olmstead, Boston, Mass., for Sarah Wean et al.

Robert L. Klivans, Boston, Mass., with whom Palmer & Dodge, Boston, Mass., was on brief, for James M. Kelley et al.

Mark Stern, East Boston, Mass., with whom Galvin & Stern, East Boston, Mass., was on brief, for Roberta Kraken et al.

Thomas G. Dignan, Jr., Boston, Mass., with whom R. K. Gad, III, Ropes & Gray, Robert J. Sherer, John W. Gahan, III, and Roche, Carens & DeGiacomo, Boston, Mass., were on brief, for Max Kargman et al.

William E. Hughes, Asst. U. S. Atty., Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellee, United States of America.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

PER CURIAM.

Following the issuance of the Supreme Court's opinion in *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), only two days before our opinion was issued in this case, appellee landlords and federal intervenors petitioned for rehearing.

There is some force in petitioners' argument. The Court in *Rath* cited, to illustrate the standard it was applying, some of the older cases indicating a more relaxed and preemption-oriented approach to balancing state and federal interests. *See Rath, supra*, at 526, 97 S.Ct. 1305, *citing Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1940) and *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). It made no reference to the four recent cases we relied on as calling for a stronger showing of conflict between federal and local laws before finding federal preemption. *Goldstein v. California*, 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973); *New York State Department of Social Services v. Dublino*, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware*, 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973); *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974). Petitioners also argue that "the delay and fractiousness inherent in the Boston Rent Control process" bring it squarely within the *Hines* conflict test adopted in *Rath*, since it " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' ". *Rath, supra*, 430 U.S. at 526, 97 S.Ct. at 1309, *quoting Hines v. Davidowitz, supra*, 312 U.S. at 67, 61 S.Ct. 399.

Accepting petitioners' argument would require us to assume that the Court in *Rath* was rejecting, without discussion, the more delicate balancing of local and federal interests which it has recently found appropriate when the federal interest was not "necessarily national in import", *Goldstein v. California, supra*, 412 U.S. at 554, 93 S.Ct. 2303, and its stated preference for reconciling " 'the operation of both statutory schemes

with one another rather than holding one completely ousted.' " *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware, supra*, 414 U.S. at 127, 94 S.Ct. at 390, quoting *Silver v. New York Stock Exchange*, 373 U.S. 341, 357, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963). *See also Dublino* and *Kewanee*, both *supra*.

We would assume such an unarticulated change of position only if there were no other way in which to read *Rath*. We conclude, however, that *Rath* does not undermine our reading of the cases cited in our opinion. First, it is obvious that the majority of the Court in *Rath* felt that it was dealing with a national scheme which, like the system for alien registration in *Hines v. Davidowitz*, required uniformity in order to achieve its primary purpose. In *Rath* the subject of federal regulation, food package labeling, was deemed by the majority to require national uniformity to carry out one of the principal purposes of the law, value comparisons of similar products by consumers. The Court, on the basis of its view of the record, concluded that if the state scheme were allowed to operate, "consumers throughout the country who attempted to compare the value of identically labeled packages of flour would not be comparing packages which contained identical amounts of flour solids." 430 U.S. at 543, 97 S.Ct. at 1318.

We therefore interpret *Rath* as a decision which, once it identified the federal purpose requiring uniformity, was concerned only with the disparities introduced by state law. Since no state interest could justify distortion of the necessary national uniformity, there was no basis for weighing state interests. By contrast, in the instant case, absent a national policy decision by HUD, we deal with the federal interests of inducing entrepreneurs to enter the field of low and middle income housing and of avoiding financial loss on federal guarantees—interests which do not necessarily require national uniformity and indeed have been deemed by HUD up to the time of its regulation, 24 C.F.R. § 403.9, to be compatible with local rent control.

We also see some internal indicia that *Rath* was not intended to disapprove the recent interest balancing cases. The Court, in citing to the *Hines v. Davidowitz* standard, whether the state's law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress, at 526, 97 S.Ct. 1305, 1309, also cited *De Canas v. Bica*, 424 U.S. 351, 363, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976). This case, which eluded us in our earlier research, is one in the company of the four others we relied upon. In Parts I and II of the opinion the Court refused to find a constitutional or statutory preemption of state legislation merely because of "some purely speculative and indirect impact on immigration", *id.* at 355, 96 S.Ct. at 936, and in Part III it manifested concern to find out how the state law was interpreted and applied before deeming it "an obstacle" to the purposes of Congress, *id.* at 363, 96 S.Ct. 933. Particularly suggestive is the Court's explanation of its approach to identifying impermissible federal-state conflict at 424 U.S. 357–58 n. 5, 96 S.Ct. 937 n. 5, where it said in part:

> Of course, even absent such a manifestation of congressional intent to "occupy the field," the Supremacy Clause requires the invalidation of any state legislation that burdens or conflicts in any manner with any federal laws or treaties. See Part III, *infra*. However, "conflicting law, absent repealing or exclusivity provisions, should be pre-empted . . . 'only to the extent necessary to protect the achievement of the aims of'" the federal law, since "the proper approach is to reconcile 'the operation of both statutory schemes with one another rather than holding [the state scheme] completely ousted.'" *Merrill Lynch, Pierce, Fenner & Smith v. Ware*, 414 U.S. 117, 127, 94 S.Ct. 383, 389, 38 L.Ed.2d 348 (1973), quoting *Silver v. New York Stock Exchange*, 373 U.S. 341, 361, 357 [, 83 S.Ct. 1246, 1259, 10 L.Ed.2d 389] (1963).

We are therefore not persuaded that we erred in our prior opinion and deny the petition for rehearing.

CAMPBELL, Circuit Judge (concurring).

As indicated in my concurring opinion, I see this less as a question of preemption than as of statutory construction. Preemption cases normally involve statutes which are silent on the precise issue, and a court has to struggle with what is implied. Here, however, I think Congress has expressly delegated to HUD the authority to accept or reject local rent control. Since HUD acquiesced during the period in question, I agree with the court's result. Given my own view of the issues, the doctrinal underpinnings of the ongoing preemption cases seem less important than they do to my brethren, and I do not necessarily agree (nor do I necessarily disagree) with what is said in that regard.