# Discrimination Among Classes of Legal Aliens in the Provision of Welfare Benefits

Proposed legislation authorizing the states to discriminate among classes of legal aliens in the provision of welfare benefits is within Congress' power, and state statutes passed pursuant to it would likely be held constitutional.

As a general matter, Congress could legislate to prevent states from providing welfare benefits to certain classes of aliens in order to effectuate a national policy on immigration. While there appears to be no basis for Congress' preempting provisions in state constitutions which mandated the payment of welfare to all aliens, regardless of their legal status, neither does any state constitution appear to contain such a mandatory provision.

August 10, 1982

## MEMORANDUM OPINION FOR THE
## ASSOCIATE DEPUTY ATTORNEY GENERAL

This responds to your request for advice whether certain language proposed for inclusion in S. 2222, 97th Cong., 2d Sess. (1982), a bill to amend the immigration laws, would be both constitutional and sufficient to overcome provisions in the constitutions of five states—California, Florida, Illinois, New York, and Texas—requiring that welfare benefits be given to citizens and legal aliens alike. The proposed language would authorize states to deny federal benefits to aliens legalized under the amnesty provisions of the bill. For reasons stated hereafter, we believe that Congress may, by statute, authorize the states to decide that they will not provide defined types of welfare benefits to designated classes of aliens legally in this country. We have, however, been unable to discover any state constitutional provisions that would affirmatively prevent state legislatures from making a decision to withdraw welfare benefits from that same class of aliens. The language will permit the states to discriminate in their statutes against this particular class of aliens.

Two states—California and New York—have statutes that explicitly provide that assistance is available to any "resident" who is either a citizen or an alien who has not been determined to be an illegal alien. Cal. Welfare and Institutions Code § 11104 (West 1980); N.Y. Social Services Law § 209(1)(a)(iv) (McKinney 1976). Illinois makes aid available to any "resident," 23 Ill. Ann. Stat. § 6–1.1 (Smith-Hurd Supp. 1982), while Florida provides assistance to those who are "needy" and are residing in Florida with an intention to remain, Fla. Stat. § 409.185(1)(c). Given the Supreme Court's ruling in *Graham* v. *Richardson,*

403 U.S. 365 (1971), it would not be surprising if most states, not just these five, provided welfare benefits to all residents, whether they were citizens or lawful aliens.

We believe that proposed § 301(a)(2)(D), which would authorize states to deny benefits to the newly created class of aliens, is permissible. Although *Graham, supra*, struck down state statutes that discriminated against aliens in the distribution of welfare benefits, that ruling was based on the statutes' encroachment on an area of federal power—*i.e.*, control of immigration—in a manner that was "inconsistent with federal policy." 403 U.S. at 380. The Supreme Court has stated, however, that if a state law regulating aliens is consistent with federal policy, or was clearly intended to be allowed by federal policy, it will not generally be struck down as violative of the federal Constitution. *See De Canas* v. *Bica*, 424 U.S. 351 (1976) (California statute forbidding employment of illegal aliens). *Cf. Toll* v. *Moreno*, 458 U.S. 1 (1982) (Congress intended certain aliens to have affirmative benefits that state policy undercut); *Plyler* v. *Doe*, 457 U.S. 202 (1982) (state could not act where there was no congressional intent to deprive children of illegal aliens of a public school education). Proposed § 301(a)(2)(D) makes explicit a national policy to deprive this new class of certain benefits and authorizes the states, if they wish, to follow suit with regard to similar benefits. We believe that the Supreme Court would uphold a state statute, passed after enactment of § 301(a)(2)(D), that deprived this particular class of aliens of benefits under the programs identified pursuant to § 301(a)(2)(C).

We have not found any provision explicitly mandating payment of general assistance to persons, regardless of their legal status, in the constitutions of the states mentioned above. New York's constitution does state that "The aid, care and support of the needy are public concerns," but it leaves to the state legislature the definition of needy and the method of meeting this affirmative duty. N.Y. Const. art. 17, § 1. The only other reference to the issue in the constitutions noted above is in the Texas constitution which authorizes, but does not require, the state legislature to provide for "needy" aged, disabled, or blind persons or dependent children. Tex. Const. art. 3, § 51–a. Thus, the assumption upon which part of your inquiry is based appears to be in error.

We are not aware of the basis upon which Congress might premise federal legislation designed to preempt contrary state constitutions and permit state legislatures to discriminate against aliens. The fact that Congress could constitutionally legislate directly to prevent all states from providing such benefits does not establish, in our view, that Congress could override state constitutional provisions that limit the power of state legislatures to make such a decision themselves. In the absence of an understanding of the particular basis upon which Congress would enact such a law, we cannot opine upon the constitutionality of any such provision.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
