ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

March 19, 2009

The Honorable Frank J. Corte, Jr.
Chair, Committee on Defense and
   Veterans' Affairs
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0699

Re: Local government policies that hinder enforcement of federal immigration laws (RQ-0733-GA)

Dear Representative Corte:

You ask whether the Texas Legislature has "the authority to deter local governments from adopting policies, or [the authority to] invalidate existing policies, which would hinder state enforcement of the federal immigration laws[.]"[1] You explain your reference to policies that hinder state enforcement of federal immigration laws to include policies that "prevent local citizens, officials, or law enforcement agencies from cooperating with the federal government regarding a person's immigration status." Request Letter at 2. Fundamental to your question is the issue of whether local government policies that hinder enforcement of federal immigration laws are preempted by federal law.

The "[p]ower to regulate immigration is unquestionably exclusively a federal power." *De Canas v. Bica*, 424 U.S. 351, 354 (1976). And the United States Constitution, through the Supremacy Clause, bars or preempts state and local governments "from taking actions that frustrate federal laws and regulatory schemes" established in relation to immigration. *City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999); *see also* U.S. CONST. art. VI, cl. 2.

Federal law prohibits restrictions on the sharing of information between local governments and the federal government. Specifically, title 8, section 1373 of the United States Code provides:

> Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or *local government entity or official may not prohibit, or in any way restrict,* any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

---

[1]Request Letter at 2 (*available at* http://www.texasattorneygeneral.gov).

8 U.S.C.A. § 1373(a) (West 2005) (emphasis added); *see also id.* § 1373(b)(1) (forbidding a person or agency from prohibiting or restricting a local government entity from sending, requesting, or receiving from the Immigration and Naturalization Service information regarding the immigration status of any individual).

And title 8, section 1644 of the United States Code similarly provides:

> Notwithstanding any other provision of Federal, State, or local law, *no State or local government entity may be prohibited, or in any way restricted,* from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States.

*Id.* § 1644 (emphasis added); *see also City of New York*, 179 F.3d at 37 (upholding sections 1373 and 1644 in the face of challenges under the Tenth Amendment and the Guarantee Clause).

The Conference Report to the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, which adopted section 1644, explains that

> [t]he conferees intend to give State and local officials the authority to communicate with the INS regarding the presence, whereabouts, or activities of illegal aliens. *This provision is designed to prevent* any State or *local law, ordinance, executive order, policy,* [or] constitutional provision, . . . *that prohibits or in any way restricts any communication between State and local officials and the INS.*

H.R. Conf. Rep. No. 104-725, at 383 (1996), *as reprinted in* 1996 U.S.C.C.A.N. 2649, 2771 (emphasis added). Thus, the larger purpose of section 1644 is to foster state and local cooperation in the enforcement of immigration law—a purpose evident throughout "the comprehensive federal statutory scheme for regulation of immigration and naturalization." *De Canas*, 424 U.S. at 353 (describing the Immigration and Nationality Act codified in scattered sections of 8 U.S.C.A.).

The Supreme Court's decision in *De Canas* has given rise to three tests used to determine whether federal law preempts an enactment by a local government relating to immigration. *See Villas at Parkside Partners v. City of Farmers Branch*, 496 F. Supp. 2d 757, 764–65 (N.D. Tex. 2007) (discussing *De Canas*, 424 U.S. 351 (1976)). The first test examines "'whether a state statute is a regulation of immigration.'" *Id.* at 765 (citations omitted). The second test examines whether "'there is a showing that it was the clear and manifest purpose of Congress to effect a complete ouster of state power'" in the area of regulation. *Id.* The third test examines whether the state statute "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'" or conflicts with federal law in such a way that compliance with both federal and state law is impossible. *Id.; see also De Canas*, 424 U.S. at 358 n.5, 363–64 (explaining that the Supremacy Clause requires the invalidation of an enactment that burdens or conflicts with federal laws); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) ("[w]hat is a sufficient

obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects"). "[F]ailure of any one of the *De Canas* tests requires the conclusion that a state law is preempted." *Villas*, 496 F. Supp. 2d at 765.

Thus, to answer your question, to the extent a local government policy prohibits or in any manner restricts officials or employees from sharing immigration information with federal authorities, it likely will fail the third *De Canas* test. *See De Canas*, 424 U.S. at 358 n.5, 363–64; *Villas*, 496 F. Supp. 2d at 765. That is, a local government policy that prohibits or restricts officials and employees from sharing immigration information with federal authorities will likely[2] conflict with sections 1373 and 1644[3] and thus, be a nullity. *See Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985) (explaining that state law is nullified when compliance with both state and federal law is impossible or when state law is an obstacle in accomplishing and executing the full purposes and objectives of Congress).

To the extent that a local government policy prevents local citizens, officials, or law enforcement agencies from "cooperating" with the federal government regarding a person's immigration status by means *other than* restricting citizens, officials, or law enforcement agencies from sharing information, such a policy may also conflict with or "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" and thus, fail the third *De Canas* test. *De Canas*, 424 U.S. at 363 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *see City of New York*, 179 F.3d at 35 (concluding that sections 1373 and 1644 are not facially "invalid federal measures that seek to impress state and local governments into the administration of federal programs"); *see also* 75 Op. Cal. Att'y Gen. No. 92-607 (1992) (concluding that "[d]ue to the [S]upremacy [C]lause of the United States Constitution, a city may not prohibit its officers and employees from cooperating in their official capacities with [INS] investigation, detention, or arrest procedures relating to alleged violations of the civil provisions of the federal immigration laws").

Because a local government policy that prevents local citizens, officials, or law enforcement agencies from sharing information or otherwise cooperating with the federal government regarding a person's immigration status is likely a nullity, the question then arises as to whether the Texas Legislature may adopt legislation to deter or invalidate such policies. We have not reviewed the

---

[2]There may be limited circumstances under which information about a person's immigration status is confidential. *See, e.g.*, *Lozano v. City of Hazleton*, 496 F. Supp. 2d 477, 511, 514–15 (M.D. Pa. 2007) (indicating that a plaintiff's immigration status may be confidential where a court has entered a protective order allowing the plaintiff to proceed anonymously); *but see Doe v. Merten*, 219 F.R.D. 387, 395 (E.D. Va. 2004) ("it remains unclear whether [8 U.S.C.A. section 1373(a)] reaches a court's inherent power to control its proceedings" including a confidentiality order). A policy recognizing one of these limited circumstances might, therefore, be permissible.

[3]You do not define the term "local government." *See generally*, Request Letter, *supra* note 1. Some entities, such as public housing agencies, may have affirmative reporting duties such that the type of policy you describe might be preempted under federal provisions other than sections 1373 and 1644. *See* 42 U.S.C.A. § 1437y (West 2003) (requiring public housing agencies to report individuals who the entity knows are not lawfully present in the United States).

details of any proposed legislation seeking to enact the type of statutes adopted by other states, such as Oklahoma, to compel local governments to comply with any duty they may have to cooperate in the enforcement of federal immigration laws. *See* OKLA. STAT. ANN. tit. 74, § 20j(F) (West Supp. 2008–09) (authorizing "a private right of action by any natural or legal person lawfully domiciled in this state to file for a writ of mandamus to compel any noncooperating local or state governmental agency to comply with such reporting laws"); Request Letter at 2 (citing to the Oklahoma Taxpayer and Citizen Protection Act of 2007 as "[a] key example of state legislative immigration action"). The Texas Legislature is not prohibited from adopting some form of legislation designed to compel local governments to comply with any duties they may have under federal immigration laws, so long as such legislation is not inconsistent with federal law.

## S U M M A R Y

The Texas Legislature is not prohibited from adopting some form of legislation designed to compel local governments to comply with any duties they may have under federal immigration laws, so long as such legislation is not inconsistent with federal law.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Christy Drake-Adams
Assistant Attorney General, Opinion Committee