JUSTICE EID, dissenting. ¶68 After today’s decision, the State of Colorado can no longer protect the victims of human smuggling operations by declaring human smuggling to be a crime. The majority reasons that Colorado’s human smuggling statute, § 18-13-128, C.R.S. (2017), penalizes “the transportation, concealment, and inducement of unlawfully present aliens,” and therefore must be preempted by federal law. See maj. op. ¶ 2. The majority, however, misses the point of Colorado’s human smuggling statute, which is to protect, not punish, the passengers of human smuggling operations regardless of their immigration status. In this way, the Colorado human smuggling statute is critically different from the federal law on the subject, which focuses on punishing the defendant driver as an aider and abettor of the passenger’s violation of federal immigration laws. Because Colorado and federal law do not focus on the same conduct, the Colorado human smuggling statute does not stand as an obstacle to, and is therefore not preempted by, federal law. Accordingly, I respectfully dissent from the majority’s opinion holding otherwise. ¶69 The majority first concludes that section 18-13-128 is preempted under principles of field preemption by the Immigration and Nationality Act (“INA”), 8 U.S.C. §§ 1101-1537 (2017). Maj. op. ¶¶ 1, 43. Citing Arizona v. United States, 567 U.S. 387, 132 S.Ct. 2492, 183 L.Ed.2d 351 (2012), the majority notes that the federal government “has broad, undoubted power over the subject of immigration and the status of aliens,” and that its “governance of immigration and alien status is extensive and complex.” Id. at ¶ 44 (quoting Arizona, 567 U.S. at 394-95, 132 S.Ct. 2492). The majority opinion seems to suggest that Arizona could be read for the proposition that the federal government has entirely occupied the field of regulating immigration and alien status, such that any law that might incidentally impact aliens is preempted. See id. at ¶¶ 43-45. But Arizona is not so broad. ¶70 The Supreme Court in Arizona carefully limited its field preemption analysis to the particular field of alien registration. See Arizona, 567 U.S. at 401-03, 132 S.Ct. 2492. In addressing section 3 of the Arizona act at issue, which criminalized the failure to carry an alien registration document, the Court explained that federal law “provide[s] a full set of standards governing alien registration.” Id at 401, 132 S.Ct. 2492. Further, it concluded that, “with respect to the subject of alien registration, Congress intended to preclude States from ‘complementing] the federal law,’ ” id at 403, 132 S.Ct. 2492 (emphasis added) (quoting Hines v. Davidowitz, 312 U.S. 52, 66-67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). The Court did not hold that Congress has fully occupied all fields in any way connected to aliens or immigration. Indeed, the Supreme Court “has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted.” DeCanas v. Bica, 424 U.S. 351, 355, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976), superseded by statute, Immigration Reform and Control Act of 1986, 100 Stat. 3359, as recognized in Chamber of Commerce v. Whiting, 563 U.S. 582, 588-90, 131 S.Ct. 1968, 179 L.Ed.2d 1031 (2011). And while the Court did acknowledge in Arizona that federal law has become more comprehensive since DeCanas, see Arizona, 567 U.S. at 404, 132 S.Ct. 2492, again, it was careful to limit its field preemption analysis to the specific field of alien registration. Id. at 403, 132 S.Ct. 2492. Because Colorado’s human smuggling statute in ho way involves alien registration, Arizona simply offers no support for the majority’s conclusion that the Colorado human smuggling statute is field preempted. ¶71 With regard to other provisions of the Arizona law at issue, the Court in Arizona took a far narrower approach, considering whether each provision at issue conflicted with federal law to such a degree that it “stands as an obstacle” to federal law. 567 U.S. at 405, 132 S.Ct. 2492 (quoting Hines, 312 U.S. at 67, 61 S.Ct. 399). Most relevant here, the Court applied such an approach in addressing section 5(C) of the Arizona law, which made it a state misdemeanor for “an unauthorized alien to knowingly apply for work.” Id. at 403, 132 S.Ct. 2492. The Supreme ■ Court emphasized that the section stood as an obstacle to the regulatory system Congress chose because it ran contrary to a deliberate choice by Congress not to impose criminal penalties on aliens seeking work. Id at 404-06,132 S.Ct. 2492. The Court observed that the legislative background of the relevant federal law, the Immigration Reform and Control Act of 1986, “underscores the fact that Congress made a deliberate choice not to impose criminal penalties on aliens who seek, or engage in, unauthorized employment.” Id. at 405, 132 S.Ct. 2492. The Court accordingly concluded that, because Congress deliberately chose not to impose criminal penalties on those seeking employment, “[i]t follows that a state law to the contrary -is -an obstacle to the regulatory system Congress chose.” Id. at 406, 132 S.Ct. 2492. ¶72 The question here, then, is whether Congress determined that Colorado should be prevented from criminalizing the conduct that is the focus of the human smuggling statute, such that the statute runs contrary to a deliberate choice by Congress. The majority opinion offers no reason to believe that Congress possessed such intent when it passed the INA, let alone made a “deliberate choice” in this regard, such as was present in Arizona. ¶73 That is because the Colorado human smuggling statute and federal law focus on different conduct. The INA makes it a crime for anyone who, “knówing[ly3 or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, .transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such' violation of law.” 8 U.S.C. § 1324(a)(l)(A)(ii) (emphasis added). Federal circuit courts have held that under the INA, the prosecution must prove “the fact” that the passenger was in the country in violation of law; the defendant either knew or recklessly disregarded that fact; and the defendant’s transportation furthered the passenger’s violation of the law. See maj. op. ¶ 68 (discussing the first two elements); see, e.g., United States v. Franco-Lopez, 687 F.3d 1222, 1226-28 (10th Cir. 2012) (listing cases); United States v. Barajas-Chavez, 162 F.3d 1286, 1288-89 (10th Cir. 1999) (en banc) (listing cases). As such, the pertinent provision of the INA is akin to an aiding and abetting statute, with the defendant driver aiding and abetting the passenger’s violation of the law. ¶74 By contrast, Colorado’s human smuggling act does not require proof that the person transported was traveling in the country in violation of the law. See maj. op. ¶¶ 59-60. Under. section .18-13-128, a defendant commits the crime of human smuggling if he provides transportation to a person for money, with the “purpose” of transporting that person in .violation of the law, even if that person was not in fact traveling in violation of law. See § 18-13-128(1); maj. op. ¶¶ 69-60. Colorado’s statute thus focuses on the conduct of the defendant driver, not on the passenger’s status or conduct. In fact, the plain language of the statute indicates the purpose of Colorado’s human smuggling statute is the protection, not punishment, of the passenger. ¶75 The majority implicitly recognizes this critical difference between- the Colorado human smuggling statute and federal law, but entirely misses its significance. The majority concludes, for example, that under the plain language of the Colorado human smuggling statute, “a person who acts with the pertinent purpose could be prosecuted, even absent a finding that the alien whom he or she •yras assisting was actually violating immigration laws.” Maj, op. ¶ 60., In other words, the Colorado human .smuggling statute focuses on protecting the victims of human smuggling laws, rather than on the violation of immigration laws. Likewise, the majority concludes that federal law “reflects Congress’s concern with aliens’ unlawful conduct” in “punish[ing] third-parties for acting ‘in furtherance of the alien’s unlawful acts.”’ Id. at ¶¶ 64-66. In other words, the focus of the federal law is the unlawful conduct of the passengers and the fact, that the defendant driver is helping them accomplish it. Indeed, the majority flat-out declares that federal law does not “indicat[e] a congressional intent to protect aliens from human smuggling.” Id at ¶ 66. ¶76 That is the whole point. Because the federal and state laws take .aim at different conduct, there can be no conflict between them. Therefore, there is no evidence that the Colorado human smuggling statute stands as an obstacle to the accomplishment of Congress’s purposes. ¶77 The majority largely relies upon several federal circuit court cases that find various state provisions to be conflict and fíéld preempted. See maj. op. ¶¶ 34-40. But the state provisions at issue in those cases mirrored federal law in focusing on immigration law. For example, unlike Colorado’s statute, each of the state laws at issue in those cases mirrored the INA’s requirement of a defendant’s knowledge or reckless disregard of the passenger’s unlawful status. The INA, as noted above, provides that any person who “knowing[ly] or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States ... in furtherance of such violation of law” shall be punished. 8 U.S.C. § 1324(a)(l)(A)(ii). The law at issue in Georgia Latino Alliance for Human Rights v. Governor of Georgia similarly criminalized “knowingly and intentionally transportfing] or mov[ing] an illegal alien ... for the purpose of furthering the illegal presence of the alien in the United States.” 691 F.3d 1250, 1256,1263 (11th Cir. 2012) (quoting Ga. Code Ann. § 16-ll-200(b) (West 2017)). The South Carolina law considered by the Fourth Circuit made it a state felony to, “knowingly or in reckless disregard of the fact” that another person is in the country in violation of law, “transport, move, or attempt, to transport that person.” United States v. South Carolina, 720 F.3d 518, 523 n.2 (4th Cir. 2013) (quoting Act 69, 2011 S.C. Acts (S.B, 20)). And the laws at issue in Valle del Sol, Inc. v. Whiting, 732 F.3d 1006, 1012-13 (9th Cir. 2013), and United States v. Alabama, 691 F.3d 1269, 1277 (11th Cir. 2012), likewise required an offender to know or recklessly disregard the fact that a passenger was in the country unlawfully. Thus, the laws considered in the federal cases, like the INA, focused on violations of immigration law, and therefore stood as an obstacle to federal law. ¶78 Indeed, unlike Colorado’s human smuggling statute, the state, laws at issue in those cases represented broad attempts to regulate immigration. For instance, each law also criminalized other actions resembling those penalized by the INA, see 8 U.S.C. § 1324(a)(1)(A), such as' concealing, harboring, or shielding an alien from detection or inducing an alien to enter the state. See Ga. Latino Alliance, 691 F.3d at 1266; Alabama, 691 F.3d at 1277; South Carolina, 720 F.3d at 523; Valle del Sol, 732 F.3d at 1012-13. The state laws were also titled similarly to the relevant provision of the INA,[3] and they were passed as parts of legislative bills with stated-immigration-related-aims. The Arizona law, for example, was part of a bill “comprised of a variety of immigration-related provisions,” which had the stated purpose of “mak[ing] attrition through enforcement the public policy of all state and government agencies in Arizona.” Valle del Sol, 732 F.3d at 1012. The Georgia law, as the majority notes, see maj. op. ¶ 34, was included in “the Illegal Immigration Reform and Enforcement Act of 2011,” which was intended to “address the problem of illegal immigration within the state,”[4] Ga. Latino Alliance, 691 F.3d at 1256. Under such circumstances, the federal circuit courts found the state laws to constitute impermissible “complements” to the INA. See id. at 1266. ¶79 Because the same circumstances are not present here, the federal circuit cases are simply inapposite. Unlike the state laws at issue .in those cases, Colorado’s human smuggling statute does not mirror federal immigration law and then attempt to supplement it. Instead, as noted above, Colorado’s statute singularly focuses on protecting passengers as the victims of human smuggling operations. As such, it is not an impermissible supplement to federal immigration law, but rather a permissible attempt to address the dangers that human smuggling poses to passengers. ¶80 As the majority points out, there are a number of additional differences between the Colorado human smuggling statute and the INA, Maj. op. ¶¶ 55-56. For example, Colorado’s human smuggling statute makes the exchange of “money or any other thing of value” an element of the crime, § 18-13-128, rather than just a consideration in sentencing as it is under the INA, see 8 U.S.C. § 1324(a)(l)(B)(i)-(ii). But these differences simply underscore that the purpose of Colorado’s human smuggling statute is to protect passengers from the dangers of human smuggling. Whereas the majority finds it problematic that Colorado’s statute criminalizes “a different range of conduct than does the INA,” see maj. op. ¶¶ 58-60, the difference in focus between the two statutes instead supports the conclusion that Congress, in enacting the INA, did not intend to preclude states from enacting laws such as Colorado’s human smuggling statute. ¶81 At bottom, the majority seems to conclude that any deviation from federal law regarding “the transportation of unlawfully present aliens” must be preempted. See maj. op. ¶ 54. But as the Supreme Court has pointed out, state powers are “often exercised in concurrence with those of the National Government.” United States v. Locke, 529 U.S. 89, 109, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000). Indeed, a “high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal act.” Whiting, 563 U.S. at 607, 131 S.Ct. 1968 (quoting Gade v. Nat’l Solid Wastes Mgmt. Ass’n, 505 U.S. 88, 110, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) (Kennedy, J., concurring in part and concurring in the judgment)). Because this “high threshold” is far from met in this case, I respectfully dissent. I am authorized to state that JUSTICE COATS and JUSTICE BOATRIGHT join in this dissent. . The relevant provision ‘of the INA is titled "Bringing in and harboring certain aliens.” 8 U.S.C. § 1324. Arizona's law was titled, in pertinent part, "Unlawful transporting, moving, concealing, harboring or shielding of unlawful aliens.” Ariz. Rev. Stat. Ann. § 13-2929 (2014). Alabama's was “Concealing, harboring, shielding, etc., unauthorized aliens,” Ala. Code § 31-13-13 (2012); South Carolina’s was "Unlawful entry into the United States; furthering illegal entry by or avoidance of detection of undocumented alien; penalties; exceptions," S.C. Code Ann. § 16-9-460 (2012); and the transportation-related portion of Georgia’s law was titled "Transporting or moving illegal aliens; penalties," Ga. Code Ann. § 16-11-200 (West 2011). . Similarly, the South Carolina law was a component of an act passed "in response to a perceived failure of the United States to secure its southern border," South Carolina, 720 F.3d at 522, and the Alabama law was included in a bill with the stated purposes of discouraging illegal immigration within the state and maximizing enforcement of federal immigration laws, see Alabama, 691 F.3d at 1276.