997 So.2d 1 (2008)
STATE of Louisiana
v.
Jesus GONZALEZ-PEREZ.
No. 2007 KA 1813.
Court of Appeal of Louisiana, First Circuit.
February 27, 2008.
Rehearing Denied January 6, 2009.
*2 Doug Moreau, District Attorney, Ron Gathe, Assistant District Attorney, Baton Rouge, Louisiana, for Plaintiff/Appellee, State of Louisiana.
Frederick Kroenke, Baton Rouge, Louisiana, for Defendant/Appellant, Jesus Gonzalez-Perez.
Before GAIDRY, McDONALD, and McCLENDON, JJ.
McCLENDON, J.
Defendant, Jesus Gonzalez-Perez, was charged by bill of information with operating a vehicle without lawful presence in the United States, a violation of LSA-R.S. 14:100.13. Defendant filed a motion to quash the bill of information, arguing LSA-R.S. 14:100.13 is not an enforceable statute, as it is preempted by federal law. Following a hearing, the trial court denied the motion to quash. Defendant withdrew his former plea and entered a plea of guilty as charged, reserving his right to appeal the trial court's ruling. Defendant was sentenced to six months imprisonment.[1] He now appeals, assigning error *3 as to the trial court's denial of the motion to quash. For the following reasons, we affirm the conviction and sentence.

FACTS
The following facts were presented as a basis for the guilty plea entered herein. On September 16, 2006, law enforcement officers on routine patrol noticed a white Dodge being operated by defendant on Airline Highway in Baton Rouge. The vehicle swerved from the centerline to the shoulder twice and then slowed down in the middle of the roadway. The officers conducted a traffic stop and asked defendant to exit the vehicle. Defendant indicated that he did not speak English. An officer, who was fluent in Spanish, read defendant his rights when defendant could not provide documentation proving that he was in this country legally.

ASSIGNMENT OF ERROR
In his sole assignment of error, defendant argues that Louisiana exceeded its grant of constitutional authority in enacting LSA-R.S. 14:100.13 and violated the Supremacy Clause of the U.S. Constitution. Defendant contends that the statute in question departs from the federal scheme by requiring state and local law enforcement officials, who lack training in applying immigration law, to make independent determinations about a driver's immigration status. Defendant further contends that LSA-R.S. 14:100.13 conflicts with 8 U.S.C. § 1304(e) in that it targets a broader group and categorizes an individual's failure to carry documentation as a felony subject to harsher penalties. Defendant also alleges that LSA-R.S. 14:100.13 creates a new procedure for identifying individuals subject to removal and reporting them to federal authorities. He argues that this procedure interferes with federal methods by delegating to state and local enforcement officials, using state-designated criteria, tasks that federal law delegates exclusively to federal agents. Defendant concludes that LSA-R.S. 14:100.13 is preempted by federal law.
However, the state contends that LSA-R.S. 14:100.13 is not preempted by federal immigration law. The state specifically argues that the trial court was correct in finding that LSA-R.S. 14:100.13 is not preempted by the REAL ID Act of 2005, Pub.L. No. 109-13, Div. B, Title II, § 202, 119 Stat. 231, and that no deportation determination would be made pursuant to LSA-R.S. 14:100.13. The state contends that nothing in the REAL ID Act of 2005 expressly or impliedly prohibits a state from prosecuting a person for illegally driving a vehicle. The state further argues that federal immigration law does not prohibit a state from criminalizing conduct that a state believes to be a legitimate threat of terror.
The Supremacy Clause declares that federal law "shall be the supreme Law of the Land[.] . . . any Thing [sic] in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supremacy Clause requires invalidation of any state legislation that burdens or conflicts in any manner with any federal laws or treaties. Thus, the determination rests on whether the state law impermissibly interferes with federal law and is thus preempted. Pursuant to Article I, Section 8 of the U.S. *4 Constitution, federal law has exclusive jurisdiction to regulate matters of naturalization and immigration. Nonetheless, federal regulations do not automatically preempt every state enactment that in any way deals with aliens. See De Canas v. Bica, 424 U.S. 351, 355, 96 S.Ct. 933, 936, 47 L.Ed.2d 43(1976).
In De Canas, the Supreme Court set forth three tests to be used in determining whether a state statute related to immigration is preempted: (1) constitutional preemption, (2) field preemption, and (3) conflict preemption. Pursuant to De Canas, if a statute fails any one of the three tests, it is preempted by federal law. League of United Latin American Citizens (LULAC) v. Wilson, 908 F.Supp. 755, 768 (C.D.Cal.1995). The League case sets forth the following outline of the tests provided in De Canas:
Under the first test, the Court must determine whether a state statute is a "regulation of immigration." Since the "[p]ower to regulate immigration is unquestionably exclusively a federal power," [De Canas, 424 U.S.] at 354, 96 S.Ct. at 936, any state statute which regulates immigration is "constitutionally proscribed." [De Canas, 424 U.S.] at 356, 96 S.Ct at 936.
Under the second test, even if the state law is not an impermissible regulation of immigration, it may still be preempted if there is a showing that it was the "clear and manifest purpose of Congress" to effect a "complete ouster of state power-including state power to promulgate laws not in conflict with federal laws" with respect to the subject matter which the statute attempts to regulate. [De Canas, 424 U.S.] at 357, 96 S.Ct. at 937. In other words, under the second test, a statute is preempted where Congress intended to "occupy the field" which the statute attempts to regulate.
Under the third test, a state law is preempted if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." [De Canas, 424 U.S.] at 363, 96 S.Ct. at 940 (citing Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). Stated differently, a statute is preempted under the third test if it conflicts with federal law making compliance with both state and federal law impossible. Michigan Canners & Freezers v. Agricultural Marketing and Bargaining Board, 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984); Florida Lime & Avocado Growers v. Paul, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 1217-18, 10 L.Ed.2d 248 (1963).
The issue raised herein presents a question of law and is, therefore, subject to de novo review. State v. Smith, 99-2094, 99-2015, 99-2019, 99-0606, p. 3 (La.7/6/00), 766 So.2d 501, 504. In interpreting LSA-R.S. 14:100.13, we consider two established rules of statutory construction: (1) all criminal statutes are construed strictly, and (2) the words of a statute must be given their everyday meaning. See State v. Kujawa, XXXX-XXXX, p. 7 (La.App. 1 Cir. 2/22/06), 929 So.2d 99, 104, writ denied, 06-0669 (La.10/6/06), 938 So.2d 65. LSA-R.S. 14:100.13 provides as follows:
A. No alien student or nonresident alien shall operate a motor vehicle in the state without documentation demonstrating that the person is lawfully present in the United States.
B. Upon arrest of a person for operating a vehicle without lawful presence in the United States, law enforcement officials shall seize the driver's license and immediately surrender such license to the office of motor vehicles for cancellation *5 and shall immediately notify the INS of the name and location of the person.
C. Whoever commits the crime of driving without lawful presence in the United States shall be fined not more than one thousand dollars, imprisoned for not more than one year, with or without hard labor, or both.
LSA-R.S. 14:100.13 does not actually forbid illegal aliens from driving; it requires all nonresident that alien drivers carry proof of legal status. The statute was enacted by 2002 La. Acts, 1st Ex.Sess., No. 46, § 1. As part of the same act, the legislature enacted LSA-R.S. 14:100.11, which sets forth the findings of the legislature and the purpose of LSA-R.S. 14:100.12, et seq.:
A. The legislature finds that the devastating consequences of the barbaric attacks on September 11, 2001 on the World Trade Center and the Pentagon as well as the pervasive bomb threats and biological terrorism in various parts of the country were committed for the purposes of demoralizing and destabilizing our society and creating a climate of fear. These heinous deeds designed to kill, maim, and strike terror into the hearts of innocent citizens of this country cannot be tolerated, nor can those less violent acts to the infrastructure of our state which are designed to intimidate, confuse, and disrupt everyday commerce and the delivery of goods and services to the populace be permitted.
B. The legislature further finds that it is imperative that state laws be enacted to complement federal efforts to uncover those who seek to use the highways of this state to commit acts of terror and who seek to gain drivers' licenses or identification cards for the purposes of masking their illegal status in this state. Accordingly, the legislature finds that state law must be strengthened with a comprehensive framework for punishing those who give false information in order to obtain drivers' licenses or identification cards from the office of motor vehicles of the Department of Public Safety and Corrections, to limit the issuance of such documentation to correspond to the time limits placed by the federal Immigration and Naturalization Service on documentation, and to make operating a motor vehicle in this state when not lawfully present in the United States a crime.
Congress has exercised its power over immigration in the Immigration and Nationality Act, 8 U.S.C. § 1101, et seq. (the "INA"). The INA is a comprehensive regulatory scheme which regulates the authorized entry, length of stay, residence status, and deportation of aliens. See Gonzales v. City of Peoria, 722 F.2d 468, 474-75 (9th Cir.1983) (recognizing that the regulatory scheme created by the INA is so pervasive as to be consistent with the exclusive federal power over immigration). The INA delegates enforcement duties to the Immigration and Naturalization Service ("INS"). Because the federal government bears the exclusive responsibility for immigration matters, the states "can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States or the several states." Takahashi v. Fish and Game Comm'n, 334 U.S. 410, 419, 68 S.Ct. 1138, 1142, 92 L.Ed. 1478 (1948). See also Plyler v. Doe, 457 U.S. 202, 225, 102 S.Ct. 2382, 2399, 72 L.Ed.2d 786 (1982) ("The States enjoy no power with respect to the classification of aliens.").
On May 11, 2005, Congress enacted the "Emergency Supplemental Appropriations Act For Defense, The Global War On Terror, *6 and Tsunami Relief, 2005," which includes as Division B, "The REAL ID Act of 2005." The REAL ID Act of 2005 provides that beginning three years after the date of its enactment, a federal agency may not accept, for any official purpose, a driver's license or identification card issued by a state to any person unless the state is meeting the requirements of the Act. The Act defines official purpose as including acts such as accessing federal facilities, boarding federally regulated commercial aircraft, entering nuclear power plants, and any other purposes that the Secretary of Homeland Security shall determine.
Subsection 202(c)(1) of the Act lists the types of identification information that must be provided before a state may issue a driver's license or identification card, and Subsection 202(c)(2) requires verification by valid documentary evidence of an applicant's citizenship or immigration status. Subsection 202(c)(3)(B) indicates that to satisfy a requirement of Subsections 202(c)(1) or (2), a state shall not accept any foreign document, other than an official passport.
While a driver's license from a non-complying state may not be accepted by any federal agency for federal identification or any other official purpose, the Act does not mandate implementation by individual states. In other words, the REAL ID Act does not prevent a state from issuing driver's licenses and identification cards that do not conform to the Act's requirements.
In De Canas, the statute at issue provided that "[n]o employer shall knowingly employ an alien who is not entitled to lawful residence in the United States if such employment would have an adverse effect on lawful resident workers." De Canas, 424 U.S. at 352 n. 1, 96 S.Ct. at 935 n. 1. Noting that in that case, California had "sought to strengthen its economy by adopting federal standards in imposing criminal sanctions against state employers who knowingly employ aliens who have no federal right to employment within the country," the Supreme Court found that the statute did not constitute an immigration regulation, but rather, had only "some purely speculative and indirect impact on immigration." De Canas 424 U.S. at 355, 96 S.Ct. at 936.
Further, in De Canas the Supreme Court emphasized that the mere fact that a state statute pertains to aliens does not require a finding of preemption, stating that "the Court has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power." De Canas, 424 U.S. at 355, 96 S.Ct. at 936. The Court stressed that "the fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." De Canas, 424 U.S. at 355, 96 S.Ct. at 936.
Herein, the trial court noted that the defense relied on the REAL ID Act in arguing that federal law preempts the statute in question. In denying the motion to quash, the trial court found that the REAL ID Act does not prohibit a state from including additional requirements for individuals who seek to operate a vehicle within the state. The trial court stated that the defense did not ask the trial court to rule on the constitutionality of the statute in general.[2] The defense objected to the trial court's ruling.
*7 The defense cited State v. Lopez, 05-0685 (La.App. 4 Cir. 12/20/06), 948 So.2d 1121, writ denied, 07-0110 (La.12/7/07), 969 So.2d 619, in its motion to quash. In concluding that LSA-R.S. 14:100.13 is preempted by federal regulations, the Fourth Circuit Court of Appeal found that the ultimate problem presented by LSA-R.S. 14:100.13 is that paragraph A places a burden on both legal and illegal aliens that exceeds any standard contemplated by federal immigration law. Lopez, 05-0685 at p. 6, 948 So.2d at 1125. However, 8 U.S.C. § 1304(e) states:
Every alien, eighteen years of age and over, shall at all times carry with him and have in his personal possession any certificate of alien registration or alien registration receipt card issued to him pursuant to subsection (d) of this section. Any alien who fails to comply with the provisions of this subsection shall be guilty of a misdemeanor and shall upon conviction for each offense be fined not to exceed $100 or be imprisoned not more than thirty days, or both.
This federal law requires aliens, eighteen years of age or over, who are legally present in the United States, to carry documentation of proof of citizenship at all times. Thus, as evidenced by 8 U.S.C. § 1304(e), the Fourth Circuit is incorrect in determining that LSA-R.S. 14:100.13 A places a burden on aliens that is not contemplated by federal immigration law.
The State of Louisiana is vested with the authority to regulate public roads and highways within the state under its police power, provided that the legislation does not prove repugnant to the provisions of the state or national constitutions. Kaltenbach v. Breaux, 690 F.Supp. 1551, 1553 (W.D.La.1988). Louisiana Revised Statutes 14:100.13 involves a determination of who may or may not lawfully operate a vehicle in this state. The statute in question is not triggered by mere presence. Instead, the criminal act prohibited is the operation of a vehicle without proper documentation of lawful presence. Accordingly, the statute in question is not a constitutionally impermissible regulation of immigration, because it does not involve a state determination of who should or should not be admitted into the country or the conditions under which a legal entrant may remain. Moreover, we do not find a clear and manifest purpose of Congress to effect a complete ouster of state power to regulate requirements for legal operation of a vehicle on public roads and highways within the state. Clearly, laws passed by Congress preempt conflicting state laws. Where there is no conflict, however, dual sovereignty allows complementary state and federal laws to exist. This court does not find that the REAL ID Act or any other federal law conflicts with the statute in question. The statute in question complements and augments federal law by reporting to the INS anyone caught without evidence of legal status. Further, the presumption is that Congress does not intend to preempt state law, unless it speaks with clarity otherwise.[3]
*8 Thus, we agree with the trial court in finding that LSA-R.S. 14:100.13 is not preempted by federal law and in denying the motion to quash. This assignment of error has no merit.
For these reasons, we affirm the conviction and sentence of defendant, Jesus Gonzalez-Perez.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The cases involving defendant Jesus Gonzalez-Perez, Javier Romero (district court number XX-XX-XXXX; 2007 KA 1810), and Gabriel Reyes (district court number XX-XX-XXXX; 2007 KA 1811), were consolidated for the motion to quash hearing, Boykin and sentencing proceedings. On appeal, separate opinions, which are consistent, have been rendered in each case. See State v. Romero, 07-1810 (La.App. 1 Cir.2/27/06), 977 So.2d 308; State v. Reyes, 07-1811 (La.App. 1 Cir.2/27/08), 989 So.2d 770.
[2] It appears that the trial court limited the defense preemption argument solely to the REAL ID Act. Nonetheless, based on our review of the motion to quash and the defense argument on the motion and out of an abundance of caution, we find that the defense adequately reserved the preemption arguments raised in this assignment of error.
[3] We note that the REAL ID Act of 2005 is not presently in effect and will not be in effect before May 11, 2008. By its express terms, the REAL ID Act is binding on federal agencies, not states. Furthermore, any failure to comply with said act would merely require the citizens of the non-complying state to acquire and utilize alternative documents for federal purposes.