STATE OF LOUISIANA
v.
CESAR ADOLFO PALACIO.
No. 2009 KA 0003.
Court of Appeals of Louisiana, First Circuit.
October 23, 2009.
Not Designated for Publication
WALTER P. REED, District Attorney, Counsel for Appellee State of Louisiana and
KATHRYN LANDRY, Special Appeals Counsel, IVAN A. ORIHUELA, Counsel for Defendant/Appellant Cesar Adolfo Palacio.
Before: WHIPPLE, HUGHES, and WELCH, JJ.
HUGHES, J.
The defendant, Cesar Adolfo Palacio, was charged by bill of information with operating a vehicle without lawful presence in the United States, a violation of LSA-R.S. 14:100.13.[1] The defendant filed a motion to quash the bill of information, arguing LSA-R.S. 14:100.13 is not a valid statute as it is preempted by federal law and that he is a victim of racial profiling. The trial court denied the motion to quash. The defendant withdrew his former plea and entered a plea of guilty as charged, reserving the right to appeal the trial court's ruling on the motion to quash the bill of information pursuant to State v. Crosby, 338 So.2d 584 (La. 1976). The sentence imposed on the defendant by the trial court included time served and the forfeiture of a cash bond previously post by the defendant in the amount of $825.00. The defendant now appeals, presenting five assignments of error as to the trial court's denial of the motion to quash the bill of information:
1. The District Court erred when it denied [the defendant's] Motion to Quash Bill of Information because Louisiana Revised Statute 14:100.13 is preempted by federal immigration law.
2. The District Court erred when it denied [the defendant's] Motion to Quash Bill of Information because Louisiana Revised Statute 14:100.13 is impermissibly vague and therefore invalid.
3. The District Court erred when it denied [the defendant's] Motion to Quash Bill of Information because the Covington Police Department had no probable cause to arrest [the defendant] pursuant to Louisiana Revised Statute 14:100.13.
4. The District Court erred when it denied [the defendant's] Motion to Quash Bill of Information because the penalty set forth by Louisiana Revised Statute 14[:] 100.13 is disproportionately severe.
5. The District Court erred when it denied [the defendant's] Motion to Quash Bill of Information because Louisiana Revised Statute 14:100.13 violates equal protection.
For the reasons that follow, we affirm the conviction and sentence.

FACTS
As the defendant entered a guilty plea to the offense as charged in the instant case, the facts were not developed. In accordance with the bill of information, the instant offense took place on December 17, 2006. The undisputed facts presented in the defendant's briefs are that the defendant was stopped when the Covington Police Department responded to a complaint of an erratic driver.

ASSIGNMENTS OF ERROR
At the outset, we note, as did the State in its appeal brief, that the defendant's motion to quash the bill of information is based on preemption and racial profiling. Articulating a new basis for the motion to quash for the first time on appeal is prohibited since the trial court would not be afforded an opportunity to consider the merits of the particular claim. LSA-C.Cr.P. arts. 841[2] and 535(D);[3] State v. Pelas, 99-0150, p. 3 (La. App. 1 Cir. 11/5/99), 745 So.2d 1215, 1217. Thus, the arguments raised in regard to assignments of error numbers two (statutory vagueness) and four (the legality of the statutory penalty) will not be addressed herein. The other assignments of error will be addressed insofar as the supporting arguments are applicable to the reserved issues of preemption and racial profiling.
In his first assignment of error, the defendant argues that the trial court erred in denying his motion to quash because LSA-R.S. 14:100.13 is preempted by federal immigration law, in that the state statute creates categories of aliens that are wholly divorced from the categories created by the federal government. In assignment of error number three, the defendant argues that the trial court erred in denying the motion to quash the bill of information because the Covington Police Department had no probable cause to arrest the defendant pursuant to LSA-R.S. 14:100.13. In assignment of error number five, the defendant argues that the trial court erred in denying the motion to quash the bill of information because the statute in question violates equal protection.
The defendant specifically argues that LSA-R.S. 14:100.13 does not use federal categories to mirror federal goals and does not rely on federal immigration standards. The defendant argues that LSA-R.S. 14:100.12 provides definitions that are confusing and irreconcilable with federal definitions. The defendant specifically notes that the definitions for alien students and nonresident aliens are new and do not employ or extend federal categories. Further, the defendant argues that the statute requires state agents to make determinations of whether an alien may be admitted or removed from the United States. The defendant also argues that the federal government occupies the field of deciding which aliens are required to carry proof of documentation. The defendant contends that the statute imposes much stiffer penalties for the same violation and that the State's more severe penalties conflict with the federal scheme's penalties. Correspondingly, the defendant argues that the statute is not a valid exercise of state police powers. Moreover, the defendant argues that the requirement that alien students and nonresident aliens carry documentation showing lawful presence in the United States disproportionately affects those aliens covered by the statute and subjects them to severe penalties.
In his motion, the defendant states that the arrest was made without probable cause because it was the result of "selective enforcement police profiling, targeting and arresting Latino drivers." The defendant now argues that the local law enforcement authorities, through the enforcement of LSA-R.S. 14:100.13, are delving into federal immigration matters under the guise of traffic enforcement. The defendant notes that the arresting officer's police report referenced that the defendant is a Hispanic male unable to speak English. The defendant also notes that he was not charged with any traffic offenses or other crimes that would justify the stop, but was instead arrested for a violation of LSA-R.S. 14:100.13 without any further investigation.
In denying the motion to quash the bill of information, the trial court found that the statute challenged herein is not an attempt to regulate immigration, but merely relies on and is compatible with federal immigration standards. Finding no violation of the Equal Protection Clause in this case, the trial court noted that the legislative purposes, as set forth in the statute at issue, clearly show a rational basis under State law for distinguishing between the classes of individuals affected.

Assignment of Error Number One (Federal Preemption):
This court has previously addressed the issue raised in this assignment of error and ruled that LSA-R.S. 14:100.13 is not invalidated on the basis of federal preemption. See State v. Reyes, XXXX-XXXX (La. App. 1 Cir. 2/27/08), 989 So.2d 770; State v. Gonzalez-Perez, XXXX-XXXX (La. App. 1 Cir. 2/27/08), 997 So.2d 1; and, State v. Ramos, XXXX-XXXX (La. App. 1 Cir. 7/28/08), 993 So.2d 281 (en banc). Our decision herein is in accordance with this jurisprudence.
The Supremacy Clause declares that federal law "shall be the supreme Law of the Land[,] ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const, art. VI, cl. 2. The Supremacy Clause requires invalidation of any state legislation that burdens or conflicts in any manner with any federal laws or treaties. Thus, the determination rests on whether a state's law impermissibly interferes with federal law and is therefore preempted. Pursuant to Article I, Section 8 of the U.S. Constitution, federal law has exclusive jurisdiction to regulate matters of naturalization and immigration. Nonetheless, federal law does not automatically preempt every state enactment that in any way deals with aliens. See De Canas v. Bica, 424 U.S. 351, 355-65, 96 S.Ct. 933, 936, 47 L.Ed.2d 43 (1976). In De Canas, the Supreme Court set forth three tests to be used in determining whether a state statute related to immigration is preempted: (1) constitutional preemption, (2) field preemption, and (3) conflict preemption. Pursuant to De Canas, if a statute fails any one of the three tests, it is preempted by federal law. See League of United Latin American Citizens v. Wilson, 908 F.Supp. 755, 768 (CD. Cal. 1995).
The issue raised herein presents a question of law and is, therefore, subject to de novo review. See State v. Smith, 99-0606, p. 3 (La. 7/6/00), 766 So.2d 501, 504. In construing LSA-R.S. 14:100.13, we consider two established rules of statutory construction: (1) all criminal statutes are construed strictly, and (2) the words of a statute must be given their everyday meaning. State v. Kujawa, XXXX-XXXX, p. 7 (La. App. 1 Cir. 2/22/06), 929 So.2d 99, 104, writ denied, XXXX-XXXX (La. 10/6/06), 938 So.2d65.
On appeal and in his motion to quash, the defendant cites State v. Lopez, XXXX-XXXX (La. App. 4 Cir. 12/20/06), 948 So.2d 1121, writ denied, XXXX-XXXX (La. 12/7/07), 969 So.2d 619, in support of his preemption argument. In concluding that LSA-R.S. 14:100.13 is preempted by federal regulations, the Fourth Circuit Court of Appeal found that the ultimate problem presented by LSR.S. 14:100.13 is that paragraph A places a burden on both legal and illegal aliens that exceeds any standard contemplated by federal immigration law. Lopez, XXXX-XXXX at p. 6, 948 So.2d at 1125. However, as this court pointed out in State v. Ramos, XXXX-XXXX at p. 7, 993 So.2d at 287, 8 U.S.C. § 1304(e) states:
Every alien, eighteen years of age and over, shall at all times carry with him and have in his personal possession any certificate of alien registration or alien registration receipt card issued to him pursuant to subsection (d) of this section. Any alien who fails to comply with the provisions of this subsection shall be guilty of a misdemeanor and shall upon conviction for each offense be fined not to exceed $100 or be imprisoned not more than thirty days, or both.
This federal law requires aliens who are legally present in the United States, aliens eighteen years of age or over, to carry documentation of proof of alien registration at all times. Thus, as evidenced by 8 U.S.C. § 1304(e), the Fourth Circuit incorrectly determined that LSA-R.S. 14:100.13(A) places a burden on aliens that is not contemplated by federal immigration law. State v. Ramos, XXXX-XXXX at pp. 7-8, 993 So. 2d at 287.
In State v. Lopez, the Fourth Circuit also discussed the REAL ID Act, which was enacted by Congress on May 11, 2005.[4] The REAL ID Act provides that beginning three years after the date of its enactment, a federal agency may not accept, for any "official purpose," a driver's license or identification card issued by a state to any person unless the state is meeting the requirements of the REAL ID Act. The REAL ID Act defines "official purpose" as including acts such as accessing federal facilities, boarding federally regulated commercial aircraft, entering nuclear power plants, and any other purpose that the Secretary of Homeland Security shall determine. State v. Ramos, XXXX-XXXX at p. 6, 993 So.2d at 285-86.
Subsection 202(c)(1) of the REAL ID Act lists the types of identification information that must be provided before a state may issue a driver's license or identification card, and Subsection 202(c)(2) requires verification by valid documentary evidence of an applicant's citizenship or immigration status. Subsection 202(c)(3)(B) states that to satisfy a requirement of Subsections 202(c)(1) or (2), a state shall not accept any foreign document, other than an official passport. State v. Ramos, XXXX-XXXX at p. 6, 993 So.2d at 286.
While a driver's license from a noncomplying state may not be accepted by any federal agency for federal identification or any other official purpose, the REAL ID Act does not mandate implementation by individual states. In other words, the REAL ID Act permits a state to issue driver's licenses and identification cards that do not conform to the REAL ID Act's requirements. State v. Ramos, XXXX-XXXX at p. 6, 993 So.2d at 286. Further, the REAL ID Act is binding on federal agencies, not states. Any burden caused by a state's refusal to regulate will fall on those citizens who need to acquire and utilize alternative documents for federal purposes, rather than on the state as a sovereign. State v. Ramos, XXXX-XXXX at p. 8, 993 So.2dat287.
The State of Louisiana is vested with the authority to regulate public roads and highways within the state under its police power, provided that the legislation does not prove repugnant to the provisions of the state or national constitutions. See Kaltenbach v. Breaux, 690 F.Supp. 1551, 1553 (W.D. La. 1988). Louisiana Revised Statute 14:100.13 involves a determination of who may or may not lawfully operate a vehicle in this state. The statute in question is not triggered by mere presence. Instead, the criminal act prohibited is the operation of a vehicle without proper documentation of lawful presence. Accordingly, LSA-R.S. 14:100.13 is not a constitutionally impermissible regulation of immigration because it does not involve a state determination of who should or should not be admitted into the country or the conditions under which a legal entrant may remain. Moreover, we do not find a clear and manifest purpose of Congress to effect a complete ouster of a state's power to regulate requirements for legal operation of a vehicle on public roads and highways within the state. It is well-settled that laws passed by Congress preempt conflicting state laws. Where there is no conflict, however, dual sovereignty allows complementary state and federal laws to exist. The presumption is that Congress does not intend to preempt state law, unless it speaks with clarity otherwise. This court does not find that the REAL ID Act or any other federal law conflicts with LSA-R.S. 14:100.13 or the definitions provided in LSA-R.S. 14.100.12. By requiring law enforcement officials to report to the INS anyone caught operating a vehicle without evidence of legal status, the statute in question complements and augments federal law. See Reyes, XXXX-XXXX at p. 10, 989 So.2d at 776-77. Therefore, we agree with the trial court in finding that LSA-R.S. 14:100.13 is not preempted by federal law.

Assignments of Error Three and Five (Probable Cause/Racial Profiling/Equal Protection):
An officer must have a reasonable and articulable suspicion to stop an individual. In determining reasonableness, the court must consider whether the facts known to the officer at the time of the stop would warrant an officer of reasonable caution to believe that the action taken was appropriate. Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). A police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts. Louisiana Code of Criminal Procedure article 215.1(A) provides that an officer's reasonable suspicion of crime allows a limited investigation of a person.[5] As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. Whren v. U.S., 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996).
Race-based selective enforcement of laws violates the Equal Protection Clause of the U.S. Constitution. However, in order to establish a violation of the Equal Protection Clause, a claimant must prove that the actions involved had a discriminatory effect and were motivated by a discriminatory purpose. See Chavez v. Illinois State Police, 251 F.3d 612, 635-36 (7th Cir. 2001). To prove discriminatory effect, the claimants are required to show that they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class, and that they were treated differently from members of an unprotected class. Chavez, 251 F.3d at 636. A claimant may show that he was similarly situated yet received disparate treatment by identifying individuals who were treated differently or by using statistics to demonstrate a significant disparity. Chavez, 251 F.3d at 636. When statistics are introduced, they must address the crucial question of whether one class is being treated differently from another class that is otherwise similarly situated. Chavez, 251 F.3d at 638. Supreme Court precedent also suggests that minority motorists alleging that a pretextual traffic stop constituted a denial of equal protection should, in presenting statistical evidence, show that similarly situated motorists, of races other than that of the claimant, could have been prosecuted, but were not. See Chavez, 251 F.3d at 637-41.
Herein, the defendant contends that he was stopped as a result of a complaint of erratic driving. As noted by the State in its appeal brief, there is nothing in the record to indicate that the officer blatantly acted with a discriminatory purpose. There was no hearing or evidence in the record that the defendant is a member of a protected class who is otherwise similarly situated to members of the unprotected class and that he was treated differently from members of an unprotected class. The defendant has failed to raise an inference of purposeful discrimination or a prima facie showing of discrimination.
After a thorough review of the instant record, we conclude the trial court did not err in rejecting the defendant's allegations of a lack of probable cause to stop, racial profiling, and denial of equal protection.
Based on the foregoing, the trial court did not err in denying the motion to quash the bill of information. We find no merit in the arguments properly addressed herein.
CONVICTION AND SENTENCE AFFIRMED.
WHIPPLE, J., concurring.
Although the statute at issue has a laudable purpose, I again find that the Louisiana statute involves an attempt to regulate immigration, which is a function more appropriately reserved to the federal government under the Supremacy Clause of the U. S. Constitution. However, given the stated purpose of the statute and the obligation to apply existing First Circuit case law, as cited by the majority, I am constrained to concur in the result reached by the majority as per this court's en banc opinion in State v. Ramos, XXXX-XXXX (La. App. 1st Cir. 7/28/08), 993 So. 2d 281.
NOTES
[1] Louisiana Revised Statute 14:100.13 provides:

A. No alien student or nonresident alien shall operate a motor vehicle in the state without documentation demonstrating that the person is lawfully present in the United States.
B. Upon arrest of a person for operating a vehicle without lawful presence in the United States, law enforcement officials shall seize the driver's license and immediately surrender such license to the office of motor vehicles for cancellation and shall immediately notify the INS of the name and location of the person.
C. Whoever commits the crime of driving without lawful presence in the United States shall be fined not more than one thousand dollars, imprisoned for not more than one year, with or without hard labor, or both.
[2] Louisiana Code of Criminal Procedure Article 841 provides:

A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
B. The requirement of an objection shall not apply to the court's ruling on any written motion.
C. The necessity for and specificity of evidentiary objections are governed by the Louisiana Code of Evidence.
[3] Louisiana Code of Criminal Procedure Article 535(D) provides:

The grounds for a motion to quash under Paragraphs B and C are waived unless a motion to quash is filed in conformity with those provisions.
[4] The "Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005" was enacted by Pub.L. No. 109-13, 119 Stat. 231 (2005). Division A of the Act addressed "Emergency Supplemental Appropriations for Defense, the Global War Terror, and Tsunami Relief," while Division B of the Act was entitled the "REAL ID Act of 2005."
[5] Louisiana Code of Criminal Procedure Article 215.1(A) provides:

A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.