MOORE, J.
| defendant, Jorge Luis Anaya-Espino, was charged by bill of information with operating a vehicle without lawful presence in the United States, a violation of La. R.S. 14:100.13. He filed a motion to quash the bill of information on grounds that federal immigration law preempts La. R.S. 14:100.13; that the statute is unconstitutionally vague, overbroad, and violates due process by shifting the burden of persuasion of an essential element of the offense to the defendant, namely, by requiring him to prove that he is lawfully in the United States.
The trial court denied the motion to quash after a hearing, argument and briefs were submitted. We granted the defendant’s supervisory writ application in part, remanding the case to the trial court with instructions to reconsider the motion in light of Arizona v. United States, — U.S. -, 132 S.Ct. 2492, 183 L.Ed.2d 351 (2012). Finding that the Arizona state law and facts in Arizona v. United States were distinguishable from the instant facts and law in this case, the trial court again denied the defendant’s motion on the same grounds. We granted the writ to docket the matter for briefing and oral argument. For the reasons that follow, we grant the defendant’s application, reverse the trial court’s ruling on the motion to quash, and dismiss the charge against the defendant.
Facts
On Sunday, October 23, 2011, Officer Lita Hopkins, a patrol officer of the Greenwood Police Department, received a telephone call from an off-duty officer of the department, Officer Ainsworth. Officer Ainsworth reported that he was then driving south on Hwy. 169 behind a blue SUV and ^observing a child standing up in the back seat of the vehicle without a seatbelt. Officer Hopkins immediately left the department building and drove to Hwy. 169 to intercept the vehicle. While driving south on Hwy. 169, Officer Hopkins passed the northbound, blue Chevrolet Blazer. She turned around and got behind the Blazer. She testified that she observed several children standing in the back seat of the vehicle without seatbelts.
Officer Hopkins initiated a traffic stop. She asked the driver, later identified as the defendant, Jorge Luis Anaya-Espino, if he spoke English, and he responded “a little.” She asked him for his driver’s license. The defendant presented Officer Hopkins with a Mexican identification card *1250 that had a Shreveport address. Two deputies from the Caddo Parish Sheriffs Office, Deputies Smalley and Foster, arrived at the scene during the stop. Not recognizing the ID, Officer Hopkins showed the deputies the ID card presented to her by the defendant. They also stated they had never seen a card like the one presented. Deputy Smalley asked the defendant to step out of the vehicle. According to Officer Hopkins’ police report, Deputy Smalley asked the defendant if he was in the United States legally, and the defendant stated “no.” The defendant was placed under arrest for operating a vehicle without proof of his lawful presence in the U.S.
Officer Hopkins spoke with the defendant’s wife, who was a front-seat passenger in the vehicle, and explained to her why her husband was being arrested. Mrs. Christy Anaya spoke English and stated that they were in the process of getting her husband’s paperwork done to make him “legal” in the U.S. She blamed herself for letting her husband drive the vehicle. |sOfficer Hopkins did not write citations for the children not being in seat-belts.
The defendant was then taken to the Caddo Correctional Center and booked for violation of La. R.S. 14:100.13, operating a vehicle without lawful presence in the U.S.
Procedural History
As noted, the state charged defendant by bill of information with operating a vehicle without lawful presence in the U.S., R.S. 14:100.13. Counsel filed a motion to quash on grounds that federal immigration law preempts the state statute and that R.S. 14:100.13 is unconstitutional. At the hearing on the motion, Officer Lita Hopkins was the sole witness to testify. The court requested the parties submit briefs. It ultimately rendered judgment denying the motion with written reasons.
In its written reasons, the court noted that the state legislature’s purpose in enacting La. R.S. 14:100.13 was to complement and enhance federal efforts to uncover those who seek to use the highways of this state to commit acts of terror and who seek to gain driver’s licenses or identification cards for the purpose of masking their illegal status in the state. The court reviewed the state’s appellate jurisprudence, noting that the Fourth Circuit in State v. Lopez, 2005-0685 (La.App. 4 Cir. 12/20/06), 948 So.2d 1121, held that La. R.S. 14:100.13 A conflicted with federal immigration law because it “places a burden on both legal and non-legal aliens which exceeds any standard contemplated by federal immigration law.”
|4On the other hand, the court cited several cases from the First Circuit holding that R.S. 14:100.13 is not preempted by federal law because the statute “does not involve a state determination of who should be admitted into the country or the conditions under which a legal entrant may remain.” State v. Reyes, 2007-1181 (La.App. 1 Cir, 2/27/08), 989 So.2d 770, 776, writ denied, 2008-2013 (La.12/18/09), 23 So.3d 929.[1] The First Circuit has concluded that the statute does not conflict with federal immigration law, and in fact, “implements the aims and goals of the federal REAL ID Act[2] as well as those of federal *1251 immigration law in general.” State v. Ramos, 2007-1448 (La.App. 1 Cir. 7/28/08), 993 So.2d 281, 288, writ denied, 2008-2103 (La.12/18/09), 23 So.3d 929.
Following the First Circuit’s line of jurisprudence, the court held that federal immigration law does not preempt R.S. 14:100.13, that the state has the authority to regulate public roads and highways, and that R.S. 14:100.13 constituted a valid exercise of the state’s police power.
The defendant applied to this court for a writ of review. We granted the writ in part, remanding to the trial court with instructions to reconsider its opinion in light of the June 25, 2012, decision of the United States Supreme Court in Arizona v. United States, supra.
[sAfter reviewing Arizona v. United States, supra, the court denied the motion to quash with written reasons affirming its previous ruling. The court distinguished the parts of the Arizona statute under scrutiny, namely Section 3 of S.B. 1070, which made failure to comply with federal alien registration requirements a state misdemeanor, and Section 5(C) of the same bill, which made it a misdemeanor for an unauthorized alien to seek or engage in employment in the state. By contrast, the court noted that La. R.S. 14:100.13 makes it a felony offense for an alien to operate a motor vehicle in the state without documentation reflecting his legal presence in the U.S. Because the offense is triggered by the operation of a motor vehicle by an undocumented alien, it concluded that the statute regulates the use of state public roads and highways, not immigration. Consequently, the court concluded that, unlike the Arizona statute, federal law does not preempt La. R.S. 14:100.13.
In his application for a writ of review, the defendant raises three assignments of error in the trial court’s ruling on the motion to quash: (1) the trial court erred in concluding that R.S. 14:100.13 is not preempted by federal law; (2) the trial court erred in determining that R.S. 14:100.13 enhances federal immigration law; and, (3) the trial court erred in concluding that R.S. 14:100.13 regulates the use of state public roads and highways— not immigration.
We granted the defendant’s writ application for docketing and oral argument.
| (¡Discussion
La. R.S. 14:100.13 reads:
A. No alien student or nonresident alien shall operate a motor vehicle in the state -without documentation demonstrating that the person is lawfully present in the United States.
B. Upon arrest of a person for operating a vehicle without lawful presence in the United States, law enforcement officials shall seize the driver’s license and immediately surrender such license to the office of motor vehicles for cancellation and shall immediately notify the INS of the name and location of the person.
C. Whoever commits the crime of driving without lawful presence in the United States shall be fined not more than one thousand dollars, imprisoned for not more than one year, with or without hard labor, or both.
R.S. 14:100.13 was enacted by 2002 La. Acts, 1st Ex.Sess., No. 46, § 1, known as the “Prevention of Terrorism on the Highways Act.” As part of the act, the legislature enacted La. R.S. 14:100.11, which set *1252 forth the following findings of the legislature and the purpose of La. R.S. 14:100.12, et seq.:
A. The legislature finds that the devastating consequences of the barbaric attacks on September 11, 2001 on the World Trade Center and the Pentagon as well as the pervasive bomb threats and biological terrorism in various parts of the country were committed for the purposes of demoralizing and destabilizing our society and creating a climate of fear. These heinous deeds designed to kill, maim, and strike terror into the hearts of innocent citizens of this country cannot be tolerated, nor can those less violent acts to the infrastructure of our state which are designed to intimidate, confuse and disrupt everyday commerce and the delivery of goods and services to the populace be permitted.
B. The legislature further finds that it is imperative that state laws be enacted to complement federal efforts to uncover those who seek to use the highways of this state to commit acts of terror and who seek to gain drivers’ licenses or identification cards for the purposes of masking them illegal status in this 17state. Accordingly, the legislature finds that state law must be strengthened with a comprehensive framework for punishing those who give false information in order to obtain drivers’ licenses or identification cards from the office of motor vehicles of the Department of Public Safety and Corrections, to limit the issuance of such documentation to correspond to the time limits placed by the federal Immigration and Naturalization Service on documentation, and to make operating a motor vehicle in this state when not lawfully present in the United States a crime.

Standard of Review

The interpretation of a statute is a question of law. Reynolds v. U.S. Agencies Cas. Ins. Co., 41,598 (La.App. 2 Cir. 11/1/06), 942 So.2d 694; Hand v. City of New Orleans, 2004-0845 (La.App. 4 Cir. 12/22/04), 892 So.2d 609, writ denied, 2005-0143 (La.4/1/05), 897 So.2d 603. A trial court’s decision on a question of law is reviewed by this court de novo. Dowles v. Conagra, Inc., 43,074 (La.App. 2 Cir. 3/26/08), 980 So.2d 180.
In his first assignment of error, Anaya-Espino argues that La. R.S. 14:100.13 is preempted by federal law under the United States Supreme Court rulings in the recently decided Arizona v. United States, supra. In that case, the supreme court struck down several sections of an Arizona statute enacted in 2010, S.B. 1070. Section 3 of S.B. 1070 made failure to comply with federal alien registration requirements a state misdemeanor; Section 5(C) made it a misdemeanor for an unauthorized alien to seek or engage in work in the state; Section 6 authorized state and local officers to arrest without a warrant any person whom the officer had probable cause to believe has committed any public offense that makes the person removable from the United States; and, Section 2(B) required officers conducting a stop, detention or arrest to make efforts in some circumstances to verify the |Rperson’s immigration status with the federal government. All but Section 2(B) were preempted by federal law.
Anaya-Espino contends that Louisiana’s R.S. 14:100.13 is similar to Section 3 of the Arizona statute because it requires persons to carry and present proof to a police officer of their lawful presence in the United States, and it allows police officers to arrest a person for suspicion of being an illegal immigrant. The defendant also contends that La. R.S. 14:100.13 is preempted by federal law under the test *1253 set forth by the Court in DeCanas v. Bica, 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976), because Congress has expressed its intent to regulate the immigration status of persons inside the United States.
Additionally, the defendant claims that, like Section 5(C) of the Arizona statute, which was also struck down, the Louisiana statute undermines federal immigration law because it penalizes an illegal immigrant more harshly than the federal alien registration statute, 8 U.S.C. § 1304(E). Anaya-Espino points out that the Court stated in Arizona v. U.S., supra, that Congress has left “no room for States to regulate” in the field of alien registration.
Anaya-Espino contends that, rather than simply allowing state officers to conduct an immigration status check during the course of a lawful detention, which the Supreme Court in Arizona indicated would likely survive preemption, R.S. 14:100.13 criminalizes, as a felony offense, a detained person’s failure to demonstrate lawful presence in the United States. R.S. 14:100.13 is not a law merely regulating the use of state public |3roads and highways, he argues. It requires a detained person to provide documentation pertaining to his right to be in the United States rather than simply his right to lawfully drive on state roads or highways. He cites State v. Lopez, 2005-0685, (La.App. 4 Cir. 12/20/06), 948 So.2d 1121, writ denied, 2007-0110 (La.12/7/07), 969 So.2d 619, which held that R.S. 14:100.13 was preempted by the federal REAL ID Act because it placed a burden on both legal and non-legal aliens alike, namely to carry proof of their legal status, which exceeded any standard contemplated by federal immigration law.
Defending the constitutionality of the statute, the state argues that La. R.S. 14:100.13 does not regulate immigration, but regulates the roads under the long-held right reserved to the state under its police powers. Seven Louisiana appellate cases, all from the First Circuit, have determined that La. R.S. 14:100.13 is not preempted by federal law, and the state notes that the Louisiana Third Circuit has twice denied writ applications arising from attacks on the validity of La. R.S. 14:100.13 after the Supreme Court’s ruling in Arizona v. U.S.[3]
The state argues that R.S. 14:100.13 does not concern the field of illegal immigration. Even a nonresident alien or an alien student who is legally present in the United States, it notes, may be convicted under the statute if he or she leaves proof of lawful presence at home. R.S. 14:100.13, | init claims, “involves a determination of who may lawfully operate a vehicle in this state.” State v. Ramos, 2007-1448 (La.App. 1 Cir. 7/28/08), 993 So.2d 281 (en banc), writ denied, 2008-2103 (La.12/18/09), 23 So.3d 929. The state distinguishes La. R.S. 14:100.13 to the parts (Sections 3 or 5(C)) of the Arizona statute that were struck down in Arizona because La. R.S. 14:100.13 is not an “alien registration” statute. La. R.S. 14:100.13 does not require an alien to register with the state or federal government, as did Section 3 of the Arizona law. It only requires that all nonresident alien drivers carry proof of *1254 legal status. The state also points out that there is no federal law criminalizing the same behavior as La. R.S. 14:100.13, as was the case with Section 3.
The state points out that Section 3 of the Arizona law adopted a federal standard and applied it to all aliens at all times. In Arizona v. United States, the Supreme Court found that this “unified system to keep track of aliens” infringed on the federal government’s registration enforcement power. The state argues that since La. R.S. 14:100.13 does not force aliens to register with the federal government, and because it is significantly different from the Arizona law, field preemption does not apply.
The state also notes that Section 2(B) of the Arizona law, which required state officers to make a reasonable attempt to determine the immigration status of a detained person if “reasonable suspicion exists that the person is an alien and is unlawfully present in the United States,” was not declared invalid as preempted by federal law. Therefore, the state contends, the portion of La. R.S. 14:100.13 that provides for a similar |ndetermination is not preempted by federal law.
The state also argues that La. R.S. 14:100.13 is not preempted by federal immigration law under a theory of conflict preemption because “a person can comply with both federal and state law,” and thus, La. R.S. 14:100.13 does not create an obstacle to federal immigration law. The Louisiana statute does not criminalize, it argues, either explicitly or implicitly, conduct specifically prohibited by federal law. In other words, Louisiana law does not require aliens to carry any identification, as long as they are not driving. The Arizona statute, it says, impinged upon substantial rights by making it a crime to be found without identification, despite the Fourteenth Amendment right to be in a public place. No such impingement is found in the Louisiana statute because there is no absolute right to operate a motor vehicle.
The state concedes that a person who violates R.S. 14:100.13 also violates the REAL ID Act, but insists that the statute does not frustrate a federal policy, and therefore, does not conflict with federal law. For example, Louisiana law and federal law both prohibit the use of a counterfeited passport, but the Louisiana law does not preempt the federal law.

Preemption

The Supremacy Clause of the U.S. Constitution requires the invalidation of any state legislation that burdens or conflicts in any manner with any federal laws or treaties. U.S. Const. art. VI, cl. 2; Arizona v. United States, supra; DeCanas v. Bica, supra. Congress’s power to | ^preempt state law is recognized in three circumstances: First, Congress may withdraw specified powers from the states by enacting a statute containing an “express preemption” provision. Second, states are precluded from regulating conduct in a field that Congress has determined must be regulated by its exclusive governance. This intent to displace state law altogether is called “field preemption.” Congressional intent to displace state law altogether can be inferred from a regulatory framework “so pervasive ... that Congress has left no room for the States to supplement it” or where there is a “federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.” Arizona v. United States, 132 S.Ct. at 2501. Third, state laws are preempted when they conflict with federal law, including when compliance with both federal and state regulations is impossible, and when the challenged state law stands as an obstacle *1255 to the accomplishment and execution of the full purposes and objectives of Congress. Id.
Applying these preemption principles to Arizona S.B. 1070, the Court in Arizona v. United States, supra, found that Sections 3, 5(C), and 6 were preempted; however, it withheld a ruling on whether Section 2(B) was preempted by federal law, stating that “[wjithout the benefit of a definitive interpretation from the state courts, it would be inappropriate to assume that it conflicted with federal law.” Id. at 2509.
Section 3 of S.B. 1070 was struck down on grounds of field and conflict preemption. The Court stated that it is well established that the federal government has occupied the field of alien registration. Arizona v. United States, supra; Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941); see also, American Ins. Assn. v. Garamendi, 539 U.S. 396, 123 S.Ct. 2374, 156 L.Ed.2d 376 (2003). Federal law specifies categories of aliens who are eligible to be admitted to the United States, 8 U.S.C. § 1182; requires aliens to register with the Federal Government and to carry proof of status, §§ 1304(e), 1306(a); and specifies which aliens may be removed and the procedures for doing so, § 1227. The federal statutory scheme provides a full set of standards governing alien registration, including the punishment for noncompliance. Arizona v. United States, supra at 2502.
Rejecting Arizona’s argument that Section 3 of the statute is not preempted because it has the same aim as federal law and adopts those standards, the Court stated: “Where Congress occupies an entire field, as it has in the field of alien registration, even complementary state regulation is impermissible.” Id. “Field preemption reflects a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards.” Id.; Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). “With respect to the subject of alien registration, Congress intended to preclude States from ‘comple-mentfing] the federal law, or enforc[ing] additional or auxiliary regulations.’” Id. at 2503, quoting Hines v. Davidowitz, supra. States may not impose their own punishments or penalties for federal offenses because they would conflict with the federal framework Congress has adopted. Id. at 2502. “Federal law,” the Court said, “makes a single sovereign responsible for maintaining | Ha comprehensive and unified system to keep track of aliens within the Nation’s borders,” thereby rejecting Arizona’s authority through Section 3 of the statute to prosecute federal registration violations. Id. at 2502.
Prior to the Arizona decision, the Louisiana First Circuit had concluded in no less than seven cases that R.S. 14:100.13 is not preempted by federal law.[4] The panels in those cases have consistently stated that R.S. 14:100.13 simply involves a determination of who may or may not lawfully operate a vehicle in this state. The statute in question is not triggered by mere presence. Instead, the criminal act prohibited is the operation of a vehicle without proper documentation of lawful presence. Thus, R.S. 14:100.13 is not a constitutionally impermissible regulation of immigration because it does not involve a state determination of who should or should not be admitted into the country or *1256 the conditions under which a legal entrant may remain.
These panels also concluded that there was not a clear and manifest purpose of Congress to effect a complete ouster of state power to regulate requirements for legal operation of a vehicle on public roads and highways within the state. Although acknowledging that laws passed by Congress preempt conflicting state laws, where there is no conflict, it stated, dual sovereignty allows complementary state and federal laws to exist. These decisions did not find that the REAL ID Act or any other federal law conflicts with R.S. 14:100.13. Rather, Louisiana’s statute complements and |1Baugments federal law by reporting to the INS anyone caught without evidence of legal status.
Although these cases predated the opinion in Arizona v. United States, supra, in State v. Lopez, 2012-2043 (La.App. 1 Cir. 3/21/13), decided recently post-Arizona, the court again rejected the defendant’s claim that La. R.S. 14:100.13 is preempted by federal law even in light of Arizona, supra. Citing the ancient 1941 decision, Hines v. Davidowitz, supra, it stated that “La. R.S. 14:100.13 is not preempted by a constitutional preemption because it does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in its enactment of legislation regulating immigration.” The court also determined that La. R.S. 14:100.13 does not regulate immigration because “[njothing in La. R.S. 14:100.13 attaches criminal consequences by the mere presence.” Instead, La. R.S. 14:100.13 regulates state public roads and highways.[5]
On the other hand, in State v. Sarrabea, supra at n. 3, the Louisiana Third Circuit reversed the conviction and sentence of Alexis Sarrabea for violation of R.S. 14:100.13, holding that federal law preempted the Louisiana statute under the rationale of Arizona v. United States, supra. The court specifically found that R.S. 14:100.13 is invalid by virtue of field preemption and conflict preemption in several respects. The Louisiana [ 1(istatute, it said, is an impermissible attempt by the state to regulate matters in the field of immigrant registration, whereas, under Arizona, even complementary state statutes and regulations are preempted by federal law. The court noted that Louisiana has enacted other laws and applied administrative provisions in tandem with R.S. 14:100.13 designed to make its own determination of what forms of documentation are an acceptable proof of an alien’s right to be in the United States, including Louisiana, and with disregard to the federal provisions in the field of immigration. It found that these policies undermine federal law.
The court also found that the stiffer penalty provision of R.S. 14:100.13, making the offense a felony punishable by one year of imprisonment, conflicts with federal registration law, violation of which is a misdemeanor and a civil, not criminal, matter. As previously stated, the Court in Arizona held that the harsher penalty under Arizona law undermined federal law and was therefore preempted.
*1257 Finally, the court found that R.S. 14:100.13 was comparable to Section 6 of Arizona’s S.B. 1070, which was also struck down by the supreme court. Section 6 permitted law enforcement to arrest a person without a warrant if the officer has probable cause to believe the person has committed any public offense that makes him removable from the United States. In other words, the statute permitted officers to make a warrantless arrest of a person whom they had probable cause to believe was an illegal alien. The panel from the Third Circuit found that R.S. 14:100.18 implicitly authorizes law enforcement to make a warrantless arrest of any alien 117operating a motor vehicle without his. papers demonstrating lawful presence in the U.S. The court noted that the Louisiana statute has no “probable cause” requirement, and no definition of the terms “alien student” or “nonresident alien” which are not recognized in the federal statutory scheme. The court concluded that these facts were inconsistent with the federal laws regulating immigration and underscored the reason why states cannot be left to their own to make complementary or auxiliary requirements.
After our review and analysis of the U.S. Supreme Court and recent state case law, for the following reasons, we conclude that R.S. 14:100.13 is preempted by federal law.
Although R.S. 14:100.13 is distinguishable from Section 3 of Arizona S.B. 1070 in that the Louisiana statute requires the additional element of “operating a motor vehicle” along with “no documentation showing a lawful presence in the United States,” and thus, “criminal consequences do not attach by [the] mere presence,” we conclude that enforcement of the statute which includes this element provides the state with independent authority to prosecute federal registration violations, which, in effect, detract from the federal alien registration scheme. See Arizona v. United States, supra at 2502. The basic premise of field preemption is that “States may not enter, in any respect, an area the Federal Government has reserved for itself,” Id., and thus are precluded from “eomplement[ing] the federal law, or enforcing] additional or auxiliary regulations.” Id. at 2503.
| ^Additionally, following the rationale of Arizona v. United States, supra, Louisiana’s much harsher penalty provision in R.S. 14:100.13 further intrudes on the federal scheme. Under federal law, the failure to carry registration papers is a misdemeanor that may be punished by a fine, imprisonment, or a term of probation. See 8 U.S.C. § 1304(e); 18 U.S.C. § 3561. By contrast, R.S. 14:100.13 carries the possibility of a hard labor sentence of up to one year. This state framework of sanctions creates a conflict with the plan Congress put in place. Arizona v. United States, supra at 2503. As the Court noted, “[C]onflict is imminent whenever two separate remedies are brought to bear on the same activity.” Id., quoting Wisconsin Dept. of Indus. v. Gould Inc., 475 U.S. 282, 106 S.Ct. 1057, 89 L.Ed.2d 223 (1986).
We also reject the state’s argument that R.S. 14:100.13 is not preempted by Arizona v. United States, supra, because there is no federal statute identical to the Louisiana statute. The REAL ID Act requires aliens to carry their registration papers at all times while in the United States, which necessarily includes operating a motor vehicle in the state of Louisiana. The Louisiana statute, in effect, carves out its own enforcement scheme regarding alien registration when an alien, documented or not, operates a motor vehicles in the state.
The Supreme Court struck down Section 5(C) of S.B. 1070, which made it a state *1258 misdemeanor for an unauthorized alien to seek employment in Arizona. Current federal law does not impose criminal sanctions on employees who seek or engage in work in the U.S. Only civil penalties | i9such as deportation and a prohibition from later obtaining lawful status may be imposed. Federal law instead focuses on employers who hire illegal aliens, and makes it illegal for employers to knowingly hire, recruit, refer, or continue to employ unauthorized workers. 8 U.S.C. §§ 1324a(a)(l)(A), (a)(2). Enforcement involves a graduating scale of civil penalties tied to the number of violations by an employer. Finding that Congress made a deliberate choice not to impose criminal penalties on aliens who seek, or engage in, unauthorized employment, it concluded that Section 5(C) stood as an obstacle to the accomplishment and execution of the full purpose of Congress by interfering with the careful balance struck (employer versus employee sanctions) with respect to unauthorized employment. Section 5(C) was therefore, preempted.
Similarly, R.S: 14:100.13 conflicts with the comprehensive regulatory scheme adopted by Congress regarding alien registration. Although there is no specific federal statute criminalizing operation of a motor vehicle by an alien not carrying proof of lawful status in the United States, Louisiana created a supplemental felony offense with penalties harsher than those provided by federal law on aliens not carrying documentation of lawful status that is enforced if they are operating a motor vehicle in Louisiana. The enforcement of this statute interferes with the alien registration scheme adopted by Congress. For this reason, we conclude that R.S. 14:100.13 conflicts with the implementation of federal immigration law, and is therefore preempted.
[ gpConclusion
For the reasons stated above, we conclude that La. R.S. 14:100.13 is preempted by federal law. Having reached this conclusion, we pretermit discussion of the defendant’s claims of overbreadth and impermissible burden shifting.
The judgment of the trial court denying the defendant’s motion to quash is reversed, and the charge against the defendant in the bill of information is dismissed.
WRIT GRANTED AND MADE PEREMPTORY.
BROWN, Chief Judge, dissenting with written reasons.

. The other cases cited include State v. Sanchez, 2010-0016 (La.App. 1 Cir. 6/11/10), 39 So.3d 834; State v. Gonzalez-Perez, 2007-1813 (La.App. 1 Cir. 1/27/08), 997 So.2d 1; State v. Ramos, 2007-1448 (La.App. 1 Cir. 7/28/08), 993 So.2d 281, writ denied, 2008-2103 (La.12/18/08), 23 So.3d 929; State v. Reyes, 2007-1811 (La.App. 1 Cir. 2/27/08), 989 So.2d 770, writ denied, 2008-2013 (La.12/18/09), 23 So.3d 929.

. 8 U.S.C. § 1304(e): "Every alien eighteen years of age and over, shall at all times carry with him and have in his personal possession *1251 any certificate of alien registration or alien registration receipt card issued to him pursuant to subsection (d) of this section.”

. The state attached copies of the writ denials to its reply brief. See State v. Ramirez, 12-01245 (La App. 3 Cir. 1/7/13) and State v. Marquez, 12-01316 (La.App. 3 Cir. 1/7/13). However, the Louisiana Supreme Court recently granted writ applications in both cases: See State v. Ramirez, 2013-0276 (La.5/3/13), 112 So.3d 851, 2013 WL 1879675, and State v. Marquez, 2013-0315 (La.5/3/13), 112 So.3d 851, 2013 WL 1879676. We also note, however, the Third Circuit recently ruled in State v. Sarrabea, 2012-1013 (La.App. 3 Cir. 5/1/13), - So.3d -, 2013 WL 1810228, that R.S. 14:100.13 is preempted by federal law under the rationale of Arizona v. United States, supra.

. State v. Sanchez, supra at n. 1; State v. Palacio, 2009-0003 (La.App. 1 Cir. 10/23/09), 2009 WL 3453930; State v. Altamirano, 2008-2083 (La.App. 1 Cir. 3/27/09), 2009 WL 838360; State v. Ramos, supra at n. 1; State v. Reyes, supra at n. 1; State v. Gonzalez-Perez, supra at n. 1; State v. Romero, 2007-1810 (La.App. 1 Cir. 2/27/08), 2008 WL 508647.

. The state also attaches to its reply brief copies of two writ denials from the Louisiana Third Circuit Court of Appeal, wherein two of the appellate judges, of a three-judge panel, denied the respective defendants’ writ applications regarding the constitutionality of La. R.S. 14:100.13. Specifically, in both cases, the appellate court stated "[tjhere is no error in the trial court's ruling.” State v. Ramirez, No. CR-137924; State v. Marquez, No. CR-137121. However, prior to rendering this decision, we note that the Louisiana Supreme Court has granted writs in those two cases.